[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This appeal was filed by appellants, Donna L.(mother) and David L. (father), to challenge the judgment of the Lucas County Court of Common Pleas, Juvenile Division, that awarded permanent custody of their minor daughter, Jennifer L., to appellee, the Lucas County Children Services (LCCS). The mother and father have separate counsel and have filed separate briefs.
The father has presented three assignments of error for review that are:
 "I. BECAUSE LCCS IMPROPERLY SERVED APPELLANT BY PUBLICATION WHILE HE WAS INCARCERATED, WHERE IT KNEW, OR THROUGH REASONABLE DILIGENCE COULD HAVE KNOWN, APPELLANT'S RESIDENCE FOR PERSONAL SERVICE, THE CHILD'S FATHER APPELLANT DAVID L. WAS DENIED DUE PROCESS IN TEMPORARY CUSTODY PROCEEDINGS (A) RENDERING JUDGMENTS OF THE JUVENILE COURT VOID AND (B) DENYING HIM THE RIGHT TO COUNSEL UNTIL SHORTLY BEFORE THE PERMANENT CUSTODY HEARING.
 "II. APPELLANT DAVID L. WAS PREJUDICED BECAUSE HIS CHILD'S ATTORNEY DID NOT PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL WHEN ADVOCATING THE BEST INTEREST OF THE CHILD, INSTEAD OF THE EXPRESSED WISHES OF THE CHILD, IN VIOLATION OF JUVENILE RULE 4 AND R.C. 2151.281 AND 2151.352.
 "III. THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE BY DETERMINING THAT HIS CHILD COULD NOT BE PLACED WITH HIM WITHIN A REASONABLE PERIOD OF TIME OR SHOULD NOT BE PLACED WITH HIM WITHOUT CLEAR AND CONVINCING EVIDENCE AS REQUIRED BY R.C. 2151.414(E).
The mother has presented the following assignments of error for review:
 "I. THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION FOR PERMANENT CUSTODY, DATED, JULY 14, 1997.
 "II. THE TRIAL COURT VIOLATED APPELLANT, DONNA L.'S, STATUTORY RIGHT TO A SPECIFIC FINDINGS OF FACT AND CONCLUSION OF LAW AS ALLOWED IN 2151.414(C)."
We will first consider the father's first assignment of error.
In support of his first assignment of error, the father argues that he was denied due process in this case for two reasons. First, he states that when he was imprisoned he was served notice of the temporary custody hearing by publication, even though LCCS could easily have learned his address and provided personal service of notice. He argues that the service by publication was faulty, because the request for service was not supported by an affidavit stating that LCCS could not locate him even though it had used due diligence to learn his whereabouts. He also argues that the temporary custody order is void because the invalid use of service by publication resulted in the trial court acting without ever obtaining valid personal jurisdiction over him.
Second, he says he was denied due process because he was not given an appointed attorney to represent him until shortly before the permanent custody hearing. As a result, he had no representation at the temporary custody hearing.
LCCS responds that the father waived all issues relating to service and personal jurisdiction for the temporary custody hearing, because he did not raise the issue in the trial court when he appeared through counsel at the permanent custody hearing. LCCS also states that while service by publication was initially made to inform the father of the temporary custody hearing, LCCS continued to search for him and requested personal service be made on him when they located him in prison.
As to the father's complaint that he was not provided with appointed counsel in a timely manner, LCCS responds that the record shows he was appointed counsel for the permanent custody hearing. Further, when he was served with a summons to inform him of the permanent custody hearing, the summons contained a provision telling him to contact the court if he wanted an appointed attorney. The father waited until he appeared in court for a pre-trial to ask for an appointed counsel. Accordingly, LCCS contends, any delay in the father receiving appointed counsel was caused by his own failure to timely ask for the appointed counsel.
The record in this case shows that this case began with a complaint in dependency and neglect and a motion for a shelter care hearing filed by LCCS on February 22, 1996. In the complaint, LCCS alleged that Jennifer and two of her siblings had been removed from their mother's home when she went into drug treatment on February 19, 1996, for treatment of addiction to Valium and heroin. LCCS also alleged that Jennifer's father was in jail. On February 23, 1996, a magistrate issued an order from the shelter care hearing in which LCCS was given temporary custody. The order also contained a ruling appointing counsel for Jennifer's mother, granting the mother supervised visitation, and ordering the mother to go through substance abuse assessment. On the same date the shelter care hearing order was filed, LCCS filed a request to serve the father by publication. The request stated that his whereabouts were unknown and was not accompanied by the affidavit required by law to show that LCCS used due diligence to discover the father's address before requesting service by publication. On February 28, 1996, LCCS filed a praecipe for service which contained the following statements:
 "Greetings. Please serve the following person\persons by personal service with a copy of the Summons and Dependency and Neglect filed in the above-captioned matter on February 22, 1996. Or in the alternative, serve by residential service or certified mail.
"[The father]
Hamilton County Justice Center
900 Sycomore Street
Cincinnati, Ohio 45202"
A notation appears on the docket sheet that summons was issued to the father by certified mail on March 13, 1996, but no evidence exists in the record to show that the personal service was actually made. The record does show that service by publication was completed on March 26, 1996.
On May 21, 1996, the trial court held the temporary custody hearing. The father was not present, and had no appointed counsel to represent his interests. The trial court found Jennifer dependent and neglected. The trial court awarded LCCS temporary custody of Jennifer.[1]
This court has carefully considered the arguments presented by the father in support of his first assignment of error. Our research has failed to uncover another case that exactly patterns the circumstances under consideration in this case. Our research does show, however, that some merit exists in the father's assertion that the temporary custody judgment in this case could be ruled void as to him if no valid service of notice was made on him relating to the temporary custody hearing. For instance, the Ninth District Court of Appeals recently stated:
 "The jurisdiction of the juvenile court does not attach until notice of the proceedings has been provided to the parties. In re Miller (1986), 33 Ohio App.3d 224, 225-26, 515 N.E.2d 635; In re Frinzl (1949), 152 Ohio St. 164, 177, 87 N.E.2d 583. If the parties do not receive notice of the proceedings, the judgment of the court is void. Id. When the residence of a party is unknown, service by publication is permissible. Juv.R. 16(A); Civ.R. 4.4(A). In order to obtain such service, the affidavit of a party must state that the residence is unknown and cannot be ascertained with reasonable diligence. Id. Once a challenge to a party's exercise of reasonable diligence occurs, that party must support its claim of the exercise of reasonable diligence. Miller, at 226. Furthermore, this court has defined reasonable diligence by stating, `minimal efforts do not constitute `reasonable diligence'; rather, it is demonstrated by such diligence, care, or attention as might be expected from a person of ordinary prudence and activity.' In re Cowling (1991), 72 Ohio App.3d 499, 502, 595 N.E.2d 470 (citations omitted.)." In re Basil Mullenax (1996), 108 Ohio App.3d 271, 274.
Our research also shows that the Supreme Court of Ohio has ruled that no waiver of the argument that a permanent custody order is void occurs when a parent who was not given valid service of process relating to a permanent custody hearing attends the hearing without counsel and defends against the motion for permanent custody. In Re Frinzl (1949), 152 Ohio St. 164,175-176. The Supreme Court noted that a permanent custody order has more "drastic consequences" than does a temporary custody order. Id. at 172.
We are greatly troubled by the circumstances that occurred in this case. However, we find that the father waived his arguments relating to personal jurisdiction, and his ability to challenge the temporary custody order of the trial court as void when counsel who appeared on his behalf at the permanent custody hearings did not argue that the trial court had no jurisdiction to consider a motion for permanent custody against him.
In reaching our decision that the father waived his personal jurisdiction arguments, we began by assuming arguendo
that the father's assertions that he did not receive proper service of notice of the temporary custody hearing are true. Without proper service of notice upon the father, the trial court had no personal jurisdiction over the father. However, the record shows that the father was given timely personal service that notified him of the hearing on the motion filed by LCCS for permanent custody of Jennifer. He appeared in person and requested an attorney be appointed to represent him at the permanent custody hearing. The trial court granted his request.
His appointed counsel appeared on the first date set for the hearing. She made statements to the trial court to inform the trial court that the father had not received proper notice of the temporary custody hearing. However, she did not make any assertions that as a result the temporary custody order was void as to the father or that the trial court lacked jurisdiction to proceed to hear the motion from LCCS that the father's parental rights be terminated and that LCCS be granted permanent custody of Jennifer. Instead, she asked for a continuance so she could better prepare for the permanent custody hearing. The trial court granted the request for a continuance.
When the permanent custody hearing began, the father's attorney said she was prepared to represent him. She proceeded to conduct effective cross-examinations on witnesses presented by LCCS. When she was allowed to withdraw as the father's counsel, a second attorney was appointed to represent his interests in the permanent custody hearings. The second attorney also chose not to argue that the trial court lacked jurisdiction and proceeded to represent the father on the merits of the permanent custody hearing. She said on the record that she had read the transcripts from the hearings that took place before her appointment, and told the trial court she was ready to represent appellant at the remaining hearings. We therefore find that because the father's attorneys continued to make appearances and to invoke the jurisdiction of the trial court without arguing that the trial court had no jurisdiction to proceed, the issues of invalid service and lack of personal jurisdiction were waived in this case. See Longshore v. White (May 19, 1994), Cuyahoga App. No. 66363, unreported; Kassouf v. Pantona (Feb. 3, 1994), Cuyahoga App. Nos. 63945, 63947, 64030, 65475, unreported.
Likewise, we acknowledge that the Supreme Court of Ohio has held that parents in Ohio have a right to have an attorney represent them at a temporary custody hearing. The right is granted by statute, not by constitution. Beard v. Williams Cty.Dept. of Social Services (1984), 12 Ohio St.3d 40, 41-42. Accordingly, the father in this case was entitled to appointed counsel to represent him at the temporary custody hearing. We note that the testimony of the caseworker in this case verified that in her opinion, the father was at a "disadvantage" during the formation and implementation of the case plan for reunification with his daughter because he did not have an attorney.
However, just as the father waived his arguments relating to the invalid service relating to the temporary custody hearing, he waived his arguments relating to the failure of the trial court to provide him with appointed counsel for the temporary custody hearing. His counsel, who appeared and represented him at the permanent custody hearing, never argued that the father's lack of appointed counsel at the temporary custody hearing caused the adjudicatory ruling of the trial court to be void. The doctrine of waiver applies to all personal rights and privileges, including rights that are conferred by statute, as long as a waiver is not against public policy. State ex rel. Hessv. Akron (1937), 132 Ohio St. 305, 307. Under the circumstances in this case, we cannot find that the waiver of the arguments relating to the lack of appointed counsel at the temporary hearing violated public policy. The father's first assignment of error is not well-taken.
In support of his second assignment of error, the father argues that he was prejudiced when Jennifer's appointed counsel failed to argue that Jennifer's wish to be reunited with one of her parents should be granted in this case. The mother has adopted the father's argument on this issue as her own in support of her first assignment of error. Accordingly, we will consider the arguments of the father and the mother on this issue together.
The father and mother both argue that Jennifer's attorney made the same recommendation to the trial court that Jennifer's guardian ad litem made — that LCCS should be awarded permanent custody of Jennifer. The father and mother say that Jennifer's attorney's recommendation was not in accordance with Jennifer's expressly stated desire to be returned to one of her parents and one of her brothers. They further argue that because their daughter's attorney did not present her wishes to the court, their daughter was deprived of her right to be heard, and their cases were in turn prejudiced.
LCCS argues that neither the father nor the mother have standing to raise any argument relating to Jennifer's right to assert that she received ineffective assistance of counsel from her attorney. LCCS also states that even if the father and mother do have standing to raise this argument on appeal, they have not shown that any prejudice occurred to Jennifer or to themselves from the representation provided by Jennifer's attorney.
This court has previously recognized that: "An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." In re Smith (1991), 77 Ohio App.3d 1, 13. Therefore, this court has ruled that when parents and their child all have the same interest, reunification of the family, the parents have standing to assert that their child's attorney provided ineffective assistance of counsel when the attorney did not adequately represent that interest for the child. Id. at 13. In In re Smith, we found that the attorney did not adequately represent the interests of the children to reunite with their parents because the attorney was acting in a dual capacity of attorney for the children and guardian ad litem for the children. As guardian ad litem, the individual concluded that the best interests of the children would be served by granting permanent custody of the children to a county agency.
However, as attorney for the children, the individual informed the court that the majority of the children wanted to be returned to their parents. Id. at 8-9. We ruled that the children were denied proper counsel because an inherent conflict existed between the obligation of the individual acting as the children's attorney to zealously represent their wishes and the obligation of the same individual acting as a guardian ad litem to conduct an investigation and make a recommendation of what disposition would serve the best interests of the children regardless of their wishes. Id. at 14.
In the case at bar, Jennifer did have two separate individuals acting as her attorney and as her guardian ad litem. The question presented by her father and mother is whether the person who acted as their daughter's attorney fulfilled her "first and highest duty * * * to zealously represent [her] client within the bounds of the law and to champion [her] client's cause." Inre Baby Girl Baxter (1985), 17 Ohio St.3d 229, 232-233.
The record does show testimony from several witnesses that showed that Jennifer loved both her father and her mother. She wanted to be reunited with her brother Christopher, and was willing to return to either parent if her brother was also there and if the home the parent provided was "safe". In her closing argument to the court, Jennifer's attorney did inform the trial court of her client's wishes when she explained:
 "A child, it seems to me, idealizes — has an ideal of what a family should be. I think probably we all do; we all have a rosy picture of what we'd like our families to be. But this child sees family in terms of her brother Christopher. Her vision of the family is that she and Christopher are a family; and that other people are and her parents are — I wouldn't say on the outskirts, but certainly not a part of this nucleus that is so important to her."
Jennifer's attorney also said she did not believe Jennifer's mother was yet able to provide a safe home because the mother was still learning to live a sober life. She said she did not think Jennifer's father knew how to provide a safe home for Jennifer because he planned to leave Jennifer in the care of his new wife while he traveled extensively in a job for the railroad. His new wife had lost custody of her own children. The father said he would give Jennifer a beeper so she could contact him with any concerns or problems she had while he was away for his job. She said Jennifer needed to be in a safe, protected family, and that neither the father nor the mother could provide what Jennifer needed.
We note that the remarks made by Jennifer's attorney about the inability of the mother and father to provide for Jennifer resemble more closely the kinds of remarks one would expect to see from a guardian ad litem who is making a recommendation about the best interests of a child. However, we find that she did accurately inform the trial court that her client wanted to be reunited with her brother Christopher, and would be willing to live with either parent if Christopher was there and if the parent provided a safe home. Her extraneous remarks about Jennifer's father and mother were not in direct contravention of her client's wishes, and did not prejudice
Jennifer's interests or interests of the father or the mother. The trial court had ample evidence before it to reach the conclusion on its own that neither the father nor the mother in this case could provide the safe home Jennifer wanted.
Accordingly, we find that even if the representation provided by Jennifer's attorney fell below a reasonable standard of representation when she made extraneous closing remarks about Jennifer's parents, the representation provided by Jennifer's attorney did not prejudice Jennifer or her parents. See Jones v.Lucas Cty. Children Services Bd. (1988), 46 Ohio App.3d 85, 86-87. The father's second assignment of error is not well-taken. To the extent that it addresses this issue, the mother's first assignment of error is not well-taken.
In support of his third assignment of error, the father argues that there was no clear and convincing evidence to support the ruling of the trial court that: (1) he failed for more than six months to remedy the conditions that caused the removal of Jennifer from her home with her parents; (2) he could not remedy his substance abuse within a year of the hearing; and (3) he demonstrated a lack of commitment toward Jennifer. He says he remedied the conditions relating to him that caused the removal of Jennifer from his home; his incarceration and domestic violence with her mother. He served his sentence and was released from jail, and he divorced her mother. He says he showed he could remedy his substance abuse problem within a year of the hearing because he successfully completed three parts of a four part treatment program just prior to the permanent custody hearings. Finally, he argues that while he missed some visitation with Jennifer, that does not show a lack of commitment toward her, since he provided explanations for the missed appointments, and often called the caseworker in advance to let her know he could not make the scheduled visitation.
LCCS responds that the record does contain clear and convincing evidence to support the trial court's decision to terminate the father's parental rights with regard to Jennifer. LCCS points to testimony that shows the father failed to correct the underlying problem that led to his incarceration: his alcohol dependency problem. Because he never overcame his alcohol problem, he was never referred to programs to address his problems with patterns of domestic abuse toward his children and his ex-wife. Likewise, he was never referred to parenting classes because he never demonstrated an ability to remain sober. His stated plans to leave Jennifer with his new wife, who lost custody of her own children, and to give Jennifer a beeper so she could reach him while he was away on his job for several days each week also show he could not provide Jennifer with a safe, stable home. Finally, LCCS argues that the father showed a lack of commitment toward Jennifer by failing to visit her on a regular basis and by failing to appear for three-and-one-half days of the four day hearing on permanent custody.
As this court has previously noted R.C. 2151.414
contains provisions that:
 "require clear and convincing evidence `that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody' and which require the consideration of several factors to determine the best interest of the child. Clear and convincing evidence has been defined by this court as `that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved.' In the matter of: Creme B. (Dec. 30, 1994), Lucas App. No. L-94-092, unreported, citing Cross v. Ledford
(1954), 161 Ohio St. 469." In re: Deanna B. (Mar. 17, 1995), Lucas App. No. L-94-108, unreported.
The father does not argue that there was no clear and convincing evidence to show that it was in Jennifer's best interest for the court to give an order granting LCCS permanent custody of Jennifer. Instead, the father focuses his arguments on the provisions in R.C. 2151.414 that set forth factors to be considered by the trial court to decide whether "a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents * * *." R.C.2151.414(E). Three of the listed factors are:
 "(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume an maintain parental duties.
 "(2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future;
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child * * *."
The trial court cited each of these factors and stated that it found these three factors were shown as to the father by clear and convincing evidence.
We agree with the trial court and with LCCS that the record contains clear and convincing evidence to support the trial court's ruling that each of these factors was shown as to the father. While the record contains testimony showing that the father did begin to address his alcohol dependency so that he could qualify for other case plan services such as domestic violence counseling and parenting classes, the record also contains testimony showing that the father never completed his treatment program.
Several witnesses testified that the father was drunk on several occasions after he began treatment, including occasions when he was scheduled to have visitation with his daughter or appointments with court and agency officials. The father therefore failed to correct the true problem that caused the removal of his daughter from his home, his alcohol dependency that caused him to be jailed for driving under the influence.
The father also never progressed to the point where he could address his domestic violence tendencies. Simply divorcing his child's mother did not address any tendency he had to use domestic violence to address problems with a spouse or a child.
The testimony of several witnesses about the father's propensity to be drunk even after he began treatment for his alcohol dependancy also provided clear and convincing proof that he had an ongoing chemical dependency problem that would not be resolved in the near future. The record shows that the father began treatment for his alcohol dependency on several occasions, but never fully completed the treatment.
Finally, the record shows that while Jennifer and her father cared for each other, the father demonstrated a lack of commitment toward Jennifer. His lack of commitment demonstrated itself in the father's plan to leave Jennifer in the care of his new wife and to provide Jennifer with a beeper so she could call him while he was away working several days each week. The plan of the father showed he was unable or unwilling to provide Jennifer with an adequate permanent home.
The factors cited by the trial court as the basis for terminating the father's parental rights in this case are supported by clear and convincing evidence. Accordingly, we find the father's third assignment of error is not well-taken.
We now return to the remaining arguments presented by the mother in support of her first assignment of error. In addition to arguing that she was prejudiced when Jennifer received ineffective assistance of counsel, the mother presents an argument which relates to whether or not Jennifer's best interests were met by the trial court's decision to grant permanent custody of Jennifer to LCCS. The mother points out that there was no testimony that Jennifer is adoptable, a factor found in R.C. 2151.414(D)(1) to consider whether an order granting permanent custody of a child to a county agency is in the best interest if the child.
The record does show that the foster mother was unwilling to adopt Jennifer because of her own advanced age. She was, however, willing to keep Jennifer as a foster child until Jennifer reached the age of eighteen. Every witness who testified about Jennifer described her as bright, loving, outgoing and extremely lovable. The caseworker from LCCS was hopeful that an adoptive home could be found for Jennifer if the agency was awarded permanent custody. The trial court therefore had clear and convincing evidence that supported its ruling that Jennifer's best interests were met by granting permanent custody to LCCS since LCCS had arranged for Jennifer to have a stable home even if she was not adopted.
The mother next argues that the trial court's decision to grant LCCS permanent custody of Jennifer was against the manifest weight of the evidence. She argues that there was no clear and convincing evidence to support the trial court's ruling that she failed to remedy the problems that initially caused the removal of Jennifer from her care and that she had ongoing chemical dependency problems.
While the record does show that the mother successfully completed much of her case plan, including chemical dependency programs, it also contains clear and convincing evidence that the mother was still unable to address some of the initial problems that caused the removal of Jennifer from her home. For instance, she demonstrated through her testimony that she was still unable to form complete and realistic plans to protect Jennifer from any further domestic violence or sexual abuse. She said if she or Jennifer were threatened by a potential abuser, she would call 911. She also said she would try to remain quiet and to be nice to whomever was the potential abuser until the police arrived in the home. She testified that she would bar her oldest son, who was in the custody of the Department of Youth Services (DYS) at the time of the hearing, and who had sexually abused Jennifer for several years before they were taken into custody by LCCS, from ever visiting her home again when he was released from DYS. At the same time, she testified that she was unable to control her oldest son.
In addition, she still exhibits a mental instability that makes it difficult for her to deal with any additional stress or pressure in her life. She testified that it was her inability to deal with stress that led to her addictions to Valium and heroin, as well as to her abuse of alcohol. She was successful at remaining sober for over fifteen months, but still exhibited mood swings that reflected the same kinds of problems she testified caused her to turn to drugs and alcohol to cope. She admitted skipping a scheduled visitation with Jennifer after a court hearing. She testified that she was simply too tired and hungry after the hearing to keep her one hour visitation appointment with Jennifer. She admitted that she knew Jennifer would be waiting for her and would be disappointed that she did not come.
The record contains clear and convincing evidence to support the ruling of the trial court that despite diligent efforts by LCCS to provide services to her, the mother was unable to correct the problems that caused the removal of Jennifer from her home. The record also has clear and convincing evidence to show that the mother has ongoing problems with emotional stability that make her unable to provide Jennifer with an adequate permanent home now or in the near future. We find the mother's first assignment of error not well-taken.
In support of her second assignment of error, the mother argues that the trial court failed to fully comply with R.C.2151.414(C). Specifically, she complains that the trial court identified Jennifer as a child with "special needs" that could not be met by her parents because of their ongoing problems with chemical dependancy and domestic violence. She argues that the trial court was required to specify the reasons why it ruled Jennifer had "special needs" in separate findings of fact and conclusions of law.
The record shows that the mother never filed a request for findings of fact and conclusions of law in the trial court. Without such a request, the trial court had no obligation to make findings of fact and conclusions of law. See In re: Onika Eppinger
(Feb. 24, 1994), Cuyahoga App. No. 64968, unreported; R.C.2151.414(C). Accordingly, the mother's second assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. The father and the mother are each ordered to pay one-half of the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 ____________________________ James R. Sherck, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.
[1] The parties who were present at the hearing agreed to permit the court to decide both adjudication and disposition issues at one hearing.