Stewart, J.
 

 The sole question for our decision is whether the Juvenile Court had jurisdiction to enter its judgment of September 19, 1947, which committed Beverly to the permanent care and custody of the •Cuyahoga County Child Welfare Board and permanently removed her from the care and custody of petitioner.
 

 As has been narrated in the statement of facts, on August 8, 1945, a complaint was filed in the Juvenile
 
 *170
 
 Court for inquiry into the alleged dependency of Beverly. That complaint was filed in accordance with Section 1639-23, General Code.
 

 Section 1639-4, General Code, defines “dependent child” and reads in part as follows:
 

 “For the purpose of this chapter, the words ‘dependent child’ includes any child:
 

 ‘ ‘ 1. Who is homeless or destitute or without proper care or support, through no fault of its parents, guardian or custodian.”
 

 On February 6, 1946, the Juvenile Court made an order finding Beverly dependent in that she was without proper care or support through no fault of the mother; that she, Beverly, came within the jurisdiction of the court, being in all respects within the provisions of the law concerning delinquent, neglected and dependent children, and that it was for the best interests of Beverly that petitioner be deprived of Beverly’s care and custody
 
 temporarily,
 
 and, therefore, ordered that Beverly be committed to the temporary care and custody of the board.
 

 At the hearing of the present case in the Common Pleas Court it was conceded that the order for temporary custody was not involved, and that petitioner had ‘been served with a citation for such hearing in accordance with Section 1639-24, General Code, which reads in part:
 

 “After a complaint or an application for care shall have been filed and after such further investigation as the court may direct, unless the parties voluntarily appear, the court shall issue a citation * * * requiring the parents, guardian, or the person or persons who have the custody or control of the child * * * to appear personally and bring the child before the court at the time and place stated. If the person so cited shall be other than the parent or guardian of the child, then
 
 *171
 
 the parent or guardian, or both, shall also be notified of the pendency of the case and of the time and place of hearing.”
 

 It was further conceded that petitioner participated in the hearing concerning the temporary custody, and the record discloses that several times in the trial of the present case petitioner’s counsel stated that the only question was with reference to the hearing as to permanent custody. In one instance, Mr. Sweeney, representing petitioner in the present case, said:
 

 “We are not concerned with ’45 or any dates preceding September 19, 1947.”
 

 At another time the court asked a question, “There is no issue that they had temporary custody?” To which Mr. Sweeney replied, “No issue. It was con•ceded they had temporary custody. Our issue is directed to this permanent custody. ’ ’
 

 It is clear that no attack was ever made on the order of the Juvenile Court of February 6, 1946, concerning the temporary care and custody of Beverly.
 

 That brings us to a consideration of the hearing in the Juvenile Court of September 19, 1947, and the order made on that date committing Beverly to the permanent care and custody of the board and removing her permanently from the care and custody of petitioner.
 

 Did the Juvenile Court have jurisdiction to make that order?
 

 Section 1639-24, G-eneral Code, in addition to what has been recited
 
 supra,
 
 provides in part:
 

 “Before any temporary commitment shall be made permanent the court shall fix a time and place for hearing and shall cause notice thereof to be served upon the parent or guardian of the child, or published, as provided in the next succeeding section. ’ ’
 

 Section 1639-25, G-eneral Code, reads in part:
 

 “Service of citations, notices and subpoenaes shall
 
 *172
 
 be made by delivering a copy to the person cited, notified or subpoenaed; or by leaving a copy at his usual place of residence; .provided, that if .the judge is satisfied that such service is impracticable, he may order service by registered mail. ’ ’
 

 The section proceeds with a provision for service by publication when it appears that a parent, guardian or other person having custody of the child resides or has gone out of the state or that his or her place of residence is unknown.
 

 It is clear that in order to change a temporary commitment to a permanent one the parent of the child to be committed must be notified of the time and place .of the hearing and that such notice must be served as provided in Section 1639-25,
 
 supra.
 
 Notice by telephone or conversation is not sufficient and unless the statutory provisions for notice are complied with or waived, the Juvenile Court cannot obtain jurisdiction to make a permanent commitment.
 

 It seems to us that the reason for the particularity which the statute requires as to notice to the parent or guardian is based on the drastic consequences of a permanent commitment. Under a temporary commitment a parent has the right to make an application for a change in such commitment as circumstances might justify, but when the commitment is made permanent the child is permanently removed from the care and custody of the parent.
 

 It is a mere truism to remark that ordinarily there is no more sacred relationship than that between a mother and her child; and that even though a mother may have been grievously at fault at one time in her life, she has the right to have her character and fitness judged as of the time of any hearing concerning her and her child. In the instant case the evidence shows that of late years petitioner has been working con
 
 *173
 
 stantly and hard in industry, has kept house competently and well, for her father, and has been living a decent and upright life.
 

 Because of the relationship between parents and children, and because of the social consequences involved, even though juvenile agencies have undoubtedly made a great contribution to social and community welfare, a Juvenile Court cannot make a valid order changing temporary commitment of a dependent child to a permanent one without a service of notice upon the parent of the child, strictly in accordance with the law.
 

 A requirement that notice be served of the time and place of hearing in reference to a permanent commitment means a notice reasonably in advance of such time so that the parent notified may have ample opportunity to secure counsel and prepare to resist the application to make the temporary commitment permanent.
 

 In the present case it is undisputed that no service of a copy of a notice of the time and place of the hearing for the permanent commitment of Beverly was made upon petitioner prior to about one hour before such hearing; that no copy of such notice was left at her usual place of residence, and that no service was made upon her by registered mail.
 

 It is claimed by respondents that petitioner appeared at the hearing concerning permanent custody, with full knowledge of the nature of it, but that knowledge is strenuously denied by petitioner. After she was served with notice, about one hour previously, she did attend the hearing, unrepresented by counsel, with a feeling that those concerned in the hearing were hostile to her, and when she was asked by the Juvenile Court at the hearing what she had to say for herself, she merely told the court that she wanted her little girl.
 

 
 *174
 
 We are of the opinion that petitioner was not legally notified of the hearing at which the order for the permanent custody of Beverly was made, and that, therefore, the Juvenile Court was without jurisdiction to make it.
 

 It is contended by respondents that the order of permanent commitment, having been made by a court of competent jurisdiction and being a valid and subsisting order, cannot be attacked collaterally by habeas corpus. That contention would undoubtedly be sound if the order was valid and subsisting; in other words, if the Juvenile Court had had jurisdiction under the circumstances to make it.
 

 Section 12165, General Code, provides:
 

 “If it appears that the person alleged to be restrained of his liberty is in custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ shall not be allowed * *
 

 The weakness of the contention of respondents rests upon the fact that the Juvenile Court did not have jurisdiction to make the order for permanent commitment for the reason that there had not been a legal notice of the time and place of the hearing served upon petitioner as required by law. This court has held that in such a case the order of the court is void
 
 ab initio
 
 and may be attacked in a habeas corpus proceeding. Under such circumstances the attack is not collateral but direct.
 

 In the case of
 
 Lewis
 
 v.
 
 Reed,
 
 117 Ohio St., 152, 157 N. E., 897, which is a decision under a former statute (Section 1648, General Code), analogous to present Section 1639-24, General Code, this court stated in the first paragraph of the syllabus:
 

 “Under Section 1648 of the General Code, the mother
 
 *175
 
 of an illegitimate child is entitled to notice, actual or constructive, of proceedings upon
 
 a
 
 complaint of dependency instituted in the Juvenile Court in reference to such child. Until notice of such proceedings has been given to the mother, the jurisdiction of the Juvenile Court does not attach and a judgment of permanent commitment rendered in such dependency proceeding is void.”
 

 In that case it appeared that the court had been deceived in that a relative of the mother had falsely told the court that the mother’s residence was unknown and that, as a result, notice of the hearing in reference to the custody of the child was served by publication.
 

 This court said in paragraph three of the syllabus:
 

 “In a
 
 habeas corpus
 
 proceeding brought by the mother of an illegitimate child whose custody has been given to a children’s home under such judgment of permanent commitment,
 
 held,
 
 as only constructive notice was given, that a judgment of permanent commitment of such child to a children’s home by a Juvenile Court is not conclusive but is open to attack for want of jurisdiction of such Juvenile Court on account of fraud committed in procuring constructive notice to the mother by false and fraudulent statements to the effect that the mother’s whereabouts were unknown.”
 

 Paragraph four of the syllabus reads:
 

 “In such case an attack upon a judgment for fraud in its procurement is direct, and is permitted notwithstanding that the judgment questioned may appear on its face regular and valid: ’ ’
 

 Although it is true that ordinarily a valid and subsisting order of a court of competent jurisdiction cannot be attacked by habeas corpus, an order is not valid and subsisting where the court does not have jurisdiction to make it.
 

 In the present case petitioner was entitled to notice
 
 *176
 
 long enough in advance of the hearing with reference to the permanent commitment of her daughter Bevériy so that petitioner could adequately prepare for it and secure counsel to represent her if she so desired, and that notice must be such as is provided by statute unless it is waived.
 

 For the proposition that petitioner is bound by the order of the Juvenile Court for the permanent commitment of Beverly because of petitioner’s voluntary appearance on the morning of the hearing and her being present at the proceedings, respondents rely on the case of
 
 Ex parte Province,
 
 127 Ohio St., 333, 188 N. E., 550, which was decided under former Section 1648, General Code. In that case the syllabus reads:
 

 “Under Section 1648, General Code, the mother of a child is entitled to notice, actual or constructive, of proceedings upon a complaint of dependency instituted in the Juvenile Court with reference to such child. A voluntary appearance in such a proceeding is a waiver of all prior service of process, and when a mother appears at and participates in a hearing in which the dependency of the child is considered, she waives all prior notice of proceedings upon such complaint of dependency to which she was entitled under the statute. ’ ’
 

 However, the
 
 Province case
 
 is readily distinguishable from the present one in that in that case, though there was no service of citation upon the mother, she voluntarily appeared and was represented by counsel who participated in the hearing.
 

 In the present case the petitioner was not represented at the hearing and her only participation was her plaintive request that she be given back her little girl.
 

 As has been said, a temporary commitment may be changed or terminated for good cause shown, but in
 
 *177
 
 case of a permanent commitment, as far as the parent is concerned, the jurisdiction of the Juvenile Court ceases.
 

 Section 1639-35, General Code, provides in part:
 

 “When a child is committed * * * * to the permanent custody of the state Department of Public Welfare, * * * a county department, board or a certified organization, the order shall state that such commitment is permanent and the jurisdiction of the court in respect to the child so committed shall cease and terminate at the time of commitment; except that if the * * * certified organization having such permanent custody make application to the court for the termination of such custody, the court upon such application * * * may terminate such custody * * *. All other commitments made by the court shall be temporary and shall continue for such period as designated by the court in its order, or until terminated or modified by the court, or until a child attains the age of 21 years. ’ ’
 

 Because of the failure to legally notify petitioner of the time and place of the hearing to make the temporary commitment of Beverly permanent, the order of the Juvenile Court of September 19, 1947, is null and void for want of jurisdiction, and the judgment of the Court of Appeals, while not as clear as might be desired, is affirmed so far as it holds that such order was a violation of petitioner’s constitutional right of due process, and is affirmed so far as it orders Beverly to be discharged from the
 
 permanent
 
 care and custody of the Cuyahoga County Child Welfare Board.
 

 The judgment of the Court of Appeals is affirmed in accordance with this opinion.
 

 Judgment accordingly.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Turner, JJ., concur.