**In re MULLENAX.**

[Cite as *In re Mullenax* (1996), 108 Ohio App. 3d 271.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006081.

Decided Jan. 3, 1996.

*John J. Kovacs,* for appellant.

*Serazin & Deery* and *James Deery,* for Catholic Social Services of Lorain County.

*Barbara Ramage,* guardian *ad litem* for Basil Mullenax.

*Jeannette Evanich,* guardian *ad litem* for Sheila Mullenax.

REECE, Judge.

Appellant, Antone Lee, appeals the Lorain County Domestic Relations Court's denial of his motion to vacate a judgment claimed to be void. We affirm.

## I

Sheila Mullenax gave birth to a son, Basil, on March 24, 1994. On April 19, 1994, Catholic Social Services of Lorain ("CSS") sought to obtain permanent custody of Basil. As grounds for its complaint for permanent custody, CSS alleged that Sheila was unable to care for Basil. Specifically, CSS pointed to her drug abuse, mental disorders, and history of prostitution as evidence. Furthermore, CSS stated it did not know the identity or residence of Basil's father. Consequently, CSS requested that service of its complaint be completed by publication. CSS provided an affidavit of one of its social workers swearing as to her lack of knowledge about the father's identity and residence. The court permitted service by publication in a newspaper of general circulation in Lorain County. The newspaper summons was addressed to "Anyone claiming to be the father of Basil Mullenax." The father never responded to the summons listed in

the publication. The trial court then granted permanent custody to CSS based on CSS's evidence and the recommendations of the guardian *ad litem* for Sheila and for Basil, as well as Sheila's own wish to give up custody of Basil.

On January 17, 1995, Antone Lee moved the trial court to vacate its order of permanent custody. Antone claimed to be Basil's father and argued that the trial court's decision was void because the court did not obtain personal jurisdiction over him because CSS did not exercise due diligence in discovering his identity, thereby foreclosing his opportunity to be heard. Antone now appeals the trial court's denial of his motion to vacate.

## II

Antone asserts two assignments of error. He contends (1) that the trial court improperly denied his motion to vacate because CSS improperly served him by publication because CSS failed to demonstrate reasonable diligence, and (2) that the trial court improperly denied his motion on the grounds that he failed to act timely and to present a meritorious defense. Antone does not argue that service by publication could never be achieved in such circumstances; he argues only that it was not properly done in this case. Therefore, we limit our decision to that issue.

## A

In his first assignment of error, Antone contends that the trial court improperly denied his motion to vacate its order granting permanent custody to CSS. He argues that the trial court did not gain personal jurisdiction over him because the service of process by publication was defective in that CSS failed to demonstrate reasonable diligence.

The trial court held a hearing on Antone's motion to vacate. At the hearing Barbara Ramage, Basil's guardian *ad litem,* testified that Sheila could not identify the father or anyone else she had sex with at the time surrounding conception. Alexis Leonard, the caseworker for CSS, testified that Sheila and her mother never mentioned Antone Lee as the father of the child. Furthermore, Leonard stated that Sheila did not mention Antone's name when asked with whom she lived at the time of conception. Leonard also testified that Sheila engaged in prostitution at the time of conception.

Antone also testified at the hearing. He testified that he had lived with Sheila for about three years, including 1993. Furthermore, he stated that he had lived with her while she was pregnant. Antone also testified that he had heard of the

pregnancy on the street and had visited the hospital in order to obtain information about the child. Finally, he testified that he had never been aware of the court's hearing for permanent custody.

The jurisdiction of the juvenile court does not attach until notice of the proceedings has been provided to the parties. *In re Miller* (1986), 33 Ohio App.3d 224, 225–226, 515 N.E.2d 635, 637–638; *In re Frinzl* (1949), 152 Ohio St. 164, 177, 39 O.O. 456, 461, 87 N.E.2d 583, 589. If the parties do not receive notice of the proceedings, the judgment of the court is void. *Id.* When the residence of a party is unknown, service by publication is permissible. Juv.R. 16(A); Civ.R. 4.4(A). In order to obtain such service, the affidavit of a party must state that the residence is unknown and cannot be ascertained with reasonable diligence. *Id.* Once a challenge to a party's exercise of reasonable diligence occurs, that party must support its claim of the exercise of reasonable diligence. *Miller,* 33 Ohio App.3d at 226, 515 N.E.2d at 638. Furthermore, this court has defined reasonable diligence by stating, "Minimal efforts do not constitute 'reasonable diligence'; rather, it is demonstrated by such diligence, care, or attention as might be expected from a person of ordinary prudence and activity." *In re Cowling* (1991), 72 Ohio App.3d 499, 502, 595 N.E.2d 470, 472.

Antone argues that he demonstrated CSS's lack of due diligence. First, he contends that Sheila lied about her inability to identify him as the father. Furthermore, he contends that if CSS had questioned the hospital staff, someone from the staff would have remembered his inquiries about Sheila. He argues that CSS's reliance on Sheila's inability to identify the father does not constitute due diligence.

This court, however, determines that the trial court did not err by denying Antone's motion to vacate. CSS attempted to discover the identity of Basil's father from Sheila *and* her mother. Neither could produce an answer. Furthermore, that CSS's failure to inquire of hospital staff demonstrated a lack of due diligence does not follow, since Antone produced no evidence that such an inquiry would have had a possibility of success. Moreover, Antone's assertion that Sheila lied remained a credibility determination for the trier of fact. Therefore, error did not occur.

B

In his second assignment of error, Antone contends the trial court improperly denied his motion on the grounds that he failed to act timely and that he did not present a meritorious defense.

In his argument to this court, Antone stated, "Assuming that Appellant did have to comply with the provisions of Ohio Rule of Civil Procedure 60(B), the record reflects that he did so." Antone argues that the trial court recognized his satisfaction of Civ.R. 60(B) criteria by stating the following:

"I would rather limit this hearing to whether or not we set aside the previous entry, not whether or not Mr. Lee could be reunified. I would rather talk about what happens with that entry of June the 21st."

Antone's argument about Civ.R. 60(B) lacks merit. We do not agree with Antone's characterization of the trial court's statement. It appears that the trial court was stating its desire to limit the hearing to whether the grant of permanent custody should be vacated based on the merits of the motion to vacate the judgment and not on whether Antone should obtain custody of Basil. Finally, and most important, Antone never moved the trial court for relief from judgment pursuant to Civ.R. 60(B). The motion Antone filed was the motion to vacate a void judgment. Although the trial court's order mentions Antone's failure to meet certain Civ.R. 60(B) criteria, the record does not indicate that a motion under Civ.R. 60(B) was properly before the court. Therefore, failure to move pursuant to Civ.R. 60(B) results in waiver of the argument on appeal. See *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003.

## III

All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment accordingly.*

BAIRD, P.J., and DICKINSON, J., concur.