OPINION
Daniel and Tammy Crow (hereinafter referred to as "Tammy" and "Daniel" for clarity) appeal the judgment of the Darke County Common Pleas Court, Juvenile Division, granting permanent custody of Ciara Crow and Daniel Crow, Jr. to the Darke County Department of Human Services, Children's Services Unit ("CSU").
CSU filed a complaint on March 13, 1998, alleging that Daniel Crow, Jr. was an abused child, and that Ciara was a dependent child. The complaint was filed after determining that Daniel Crow, Jr., who was two weeks old, had severe physical injuries from being shaken. Ciara, who suffered from cerebral palsy, was developmentally delayed and had various other medical problems at the time of her removal. CSU requested temporary custody of the siblings. The trial court granted temporary custody pendente lite of the children at a shelter care hearing on March 16, 1998. The trial court appointed counsel to jointly represent Daniel and Tammy, however on June 11, 1998, the trial court appointed separate counsel for Tammy due to a conflict of interest between the parties.
On June 23, 1998, the trial court held the formal adjudicatory hearing and found Daniel Crow, Jr. to be an abused child and Ciara to be a dependent child. The parties subsequently signed an agreed judgment entry on August 12, 1998, granting temporary custody of the children to CSU. During the next year and a half, various hearings were held regarding the parties' progress on the case plan and the status of the reunification with the children. Daniel and Tammy were present for a majority of the hearings, and their attorneys were present at all hearings.
In January of 2000, CSU proposed an agreed entry granting Tammy temporary custody of Ciara with protective supervision remaining with CSU. The Court Appointed Special Advocate ("CASA") guardian ad litem, however, recommended that CSU be granted permanent custody of Ciara. A hearing was held on the matter on January 5, 2000, whereby all parties agreed that Daniel Crow, Jr. would be placed into the permanent custody of CSU. At that time, Tammy was granted unsupervised visitation with Ciara, and the trial court ordered that Daniel have no contact with Tammy and Ciara. On January 13, 2000, it was discovered that Tammy had violated the no contact order and CSU immediately terminated Tammy's unsupervised visitation.
A motion for permanent custody was filed by CSU on February 29, 2000. The motion alleged that Tammy and Daniel had not substantially complied with the CSU case plan and that they had demonstrated a lack of commitment to reunify with Ciara. The certificate of service portion of the motion indicated that service was sent out via regular mail to the parties' attorneys, however it did not indicate a date when this occurred.
The three-day trial commenced on May 1, 2000. At the beginning of trial, the parties entered several stipulations regarding Tammy's and Daniel's progress on the case plan. Thereafter, Tammy's and Daniel's attorneys entered objections to the trial court's jurisdiction in the matter, alleging that the parties had not been properly served. The trial court overruled the objections. During the trial, counsel for both Tammy and Daniel participated fully and defended the motion on the merits.
The trial court filed its judgment entry awarding permanent custody of Ciara to CSU on June 14, 2000. From this judgment, Tammy and Daniel each filed timely notices of appeal with this court. Separately, Tammy and Daniel assert a defect in personal jurisdiction, and Tammy additionally argues that the trial court's judgment was not in Ciara's best interest. Although the wording of their assignments of error pertaining to personal jurisdiction are slightly different, for ease of organization, we will use the language of Tammy's first assignment of error as a heading before discussing both parties' arguments.
 The Court lacked jurisdiction to grant permanent custody of Ciara Crow to Children's Services because notice of the permanent custody motion was not served upon Appellant as required by Revised Code Sections 2151.414 and 2151.29.
Tammy and Daniel contend that the trial court lacked personal jurisdiction to grant permanent custody of Ciara to CSU because proper service had never been perfected on them, and that this argument had been properly preserved by objecting at trial.
It is a fundamental rule of law that a court must have personal jurisdiction over a party in order to enter a valid judgment. Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156. The general rule in Ohio is,
 [B]efore a personal judgment can be entered against a person, process must have been served upon him, or he must have entered an appearance in the action, or he must have affirmatively waived service. Absent any of these circumstances, the trial court lacks jurisdiction to enter a judgment, and if a judgment is nevertheless rendered, it is a nullity and void ab initio.
O.B. Corp. v. Cordell (1988), 47 Ohio App.3d 170, 171 (citations omitted). See, also, Maryhew, supra, at 156.
R.C. 2151.414(A) states that upon a filing of a motion for permanent custody, notice of the filing of the motion and of the hearing shall be given to all parties in the action. Such notice should include a full explanation of the parties' rights and the potential outcome of the proceeding. Id. R.C. 2151.29 governs the process of providing such notice. Tammy and Daniel argue that they were never notified of the hearing.
CSU asserts that proper notice was given pursuant to Juv.R. 20(B) by sending, via regular mail, a copy of the motion for permanent custody with the notice of the parties' rights and possible consequences to the parties' attorneys. Juv.R. 20(B) states in pertinent part:
 Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service is ordered by the court upon the party. Service upon the attorney or the party shall be made in the manner provided in Civ.R. 5(B).
Civ.R. 5(B) states that when service is to be made upon a party represented by an attorney, service shall be made on the attorney "by * * * mailing it to the last known address of the person to be served[.]" The substance of this rule was expounded upon by the Ohio Supreme Court in Swander Ditch Landowners' Assn. v. Joint Bd. of Huron Seneca Cty. Cmmrs. (1990), 51 Ohio St.3d 131, 134, specifying that when a party to be served is represented by counsel, service should be made upon the attorney rather than the party in the absence of a court order to the contrary. The basis for this decision was that an attorney is in a better position to understand the legal import of any documents required to be served to a client and the nature of any action which needs to be taken. Id.
We note that in this case, CSU filed its motion for permanent custody and attached the requisite portion of service of process to the motion. In accordance with Juv.R. 20(B) and Civ.R. 5(B), attorneys for Tammy and Daniel were to be served with the motion and notice of the hearing, however there is no verification that appropriate service was sent out via ordinary mail, as a date is missing from the service notice. We thus find no evidence that personal jurisdiction was invoked through service of the parties' attorneys.
This does not end our analysis, however, as jurisdiction can be acquired over a party in the absence of proper service. Maryhew, supra, at 156. As noted in Goetz v. First Benefits Agency, Inc. (Oct. 15, 1997), Summit App. No. 18381, unreported:
 Voluntary participation in the litigation with a view to resolution of the dispute binds the parties so participating. The test of whether there is sufficient participation to constitute a voluntary appearance, aside from objecting to jurisdiction, appears to be whether by the acts done in relation to the litigation the party has sought to utilize the machinery of the court in some affirmative way to serve that party's ends in the resolution of the dispute.
(Citations omitted.) Notably, in Garnett v. Garnett (Aug. 7, 1986), Cuyahoga App. No. 50857, unreported, the appellant objected to defective service on the record, thus adequately preserving his objection, however he continued with trial, giving substantive testimony and participating in the merits of the case. The trial court found that despite the objection to service, the latter acts "directed at the merits of the motion against appellant, show at that point he voluntarily submitted himself to the court's jurisdiction and waived his objection to defective service." Id. The appellate court thus overruled appellant's claims that the trial court had no personal jurisdiction over the matter for failure of service upon him. Id. See, also, In re Shaeffer Children (1993), 85 Ohio App.3d 683, 688 (appellant's election to appear at a permanent custody trial and participation in the merits of the trial with counsel "waives any objection to the inadequacies of the notice").
In Rapposelli v. Garthoff (June 24, 1988), Lake App. No. 12-179, unreported, the court distinguished its factual situation from Garnett and found that the trial court lacked personal jurisdiction because appellant participated in the trial only to argue the procedural defect, not to address the merits of the case. For these reasons, the appellate court found that he did not voluntarily submit to the trial court's jurisdiction. Id.
We find this case analogous to Garnett, supra. Tammy and Daniel appeared at every stage of the case accompanied by their attorneys. Through their respective attorneys, they submitted responsive pleadings and motions and participated in discovery. Tammy, Daniel and their attorneys attended and participated in the numerous hearings regarding this case, and at trial, both parties were very active in defending their cases. We conclude that by their actions they voluntarily submitted themselves to the trial court's jurisdiction, despite their initial objections at trial. Additionally, neither party offered evidence of how they could have presented their case any differently had they been personally served with notice of the hearing.
Tammy and Daniel rely heavily upon In re Frinzl (1949), 152 Ohio St. 164, 39 O.O. 456, arguing error in the trial court's proceedings. They assert that personal service is necessary, because the court stated that "a Juvenile Court cannot make a valid order changing temporary commitment of a dependent child to a permanent one without a service of notice upon the parent of the child, strictly in accordance with the law." Id., at 173, 39 O.O. at 460. They further argue that the Frinzl court determined that such notice cannot be waived. Upon a close reading of Frinzl, we disagree with this interpretation. The Frinzl court found that a parent, in a permanent custody proceeding, has a right to be notified of the time and place of the hearing. The defect in Frinzl was that the notification for the permanent custody hearing was not given to the mother of the child until one hour prior to the hearing. The mother appeared for the hearing, unrepresented by counsel, and did not participate in the trial except for her statement to the court that she wanted her little girl. The Ohio Supreme Court found that this did not constitute legal notice nor waiver of such. Moreover, the court recognized that notice could be waived, stating that "unless the statutory provisions for notice are complied with or waived, the Juvenile Court cannot obtain jurisdiction to make a permanent commitment." Id. at 172, 39 O.O. at 459. (Emphasis added.) Unlike the mother in Frinzl, we find that both parties in this case had the notice and opportunity to assert their rights, and did so to the fullest extent.
Based upon the above discussion, we overrule Tammy and Daniel's first assignments of error.
We will now address Tammy's second assignment of error. We note that Tammy is the sole party contesting this issue, thus we will address this assignment of error as it relates only to Tammy.
 II. The Court erred in its' {sic} Findings of Facts and Law that it is in the child Ciara Crow's best interest, by clear and convincing evidence, that permanent custody of Ciara be granted to Children's Services as required in Ohio Revised Code Section 2151.414.
In this assignment of error, Tammy argues that she substantially complied with the case plan and is capable of caring for Ciara, therefore the trial court erred in finding that it was in Ciara's best interest to grant permanent custody to CSU.
A trial court may grant permanent custody of a child who has not been abandoned or orphaned to a public children services agency that has temporary custody of the child, if the court determines, by clear and convincing evidence, that it is in the best interest of the child to do so, and the child cannot be placed with either of the child's parents within a reasonable time, or should not be placed with the child's parents. R.C. 2151.414(B). "Clear and convincing evidence" is that which produces in the mind of the trier of fact a firm belief or conviction in the proposition sought to be established. In Re Weaver (1992),79 Ohio App.3d 59, 64. On review, an appellate court must determine if the evidence is sufficient to support a firm belief or conviction that a particular fact has been established or proven. Id. The reviewing court must keep in mind that "[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller (1988),37 Ohio St.3d 71, 74.
In determining whether it is in the best interest of a child to grant permanent custody to a children's services agency, a trial court must consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
R.C. 2151.414(D).
In our judgment, the trial court did not abuse its discretion in determining that CSU had created a reasonable case plan and had made diligent efforts to help Tammy remedy the conditions that caused Ciara's removal from the home.
At trial, CSU caseworkers produced evidence that Tammy had failed to substantially comply with the case plan and that Tammy had shown an unwillingness to reunify and provide an adequate, permanent home for Ciara, who has many special needs. Tammy's objectives in the case plan during the twenty-five months that Ciara was in CSU's temporary custody were as follows: (1) complete a psychological assessment, (2) attend, participate in and complete the CAIR program (for anger management and violence control), (3) attend and participate in counseling through the Darke County Mental Health Clinic, (4) participate in marital counseling through the Darke County Mental Health Clinic, and (5) attend the Parent Seizure Support Group.
The parties stipulated that Tammy had completed a psychological evaluation, a cognitive reasoning assessment, and an assessment on her ability to parent a special needs child through Dr. Gordon Harris. Tammy also completed the CAIR program and the Parent Seizure Disorder Group. Despite these efforts, Tammy hindered the reunification process by failing to complete the remaining case plan objectives necessary for her to parent a special needs child.
It is important to note that Ciara was diagnosed with hypotonic cerebral palsy, a condition which causes Ciara's muscles to be very loose and weak. The trial court summarized Ciara's other physical and medical issues as follows:
 Dr. Jane Lynch testified * * * that CIARA CROW has problems with gaining weight and with eating foods. Dr. Lynch further testified that CIARA CROW is a high maintenance patient who needs lots of intervention such as visiting the Occupational Therapy Clinic, Gastronology Clinic and Orthopedic Clinic on a regular and consistent basis, as well as attending Anthony Wayne Early Childhood Center to develop her language and motor skills. She then stated that CIARA CROW also needs daily help, a high degree of devotion and that her caretaker needs to make appointments and follow through with the recommendations of the doctors and therapists and that if CIARA CROW did not receive this care, she would regress and would need a feeding tube. Additionally, Dr. Lynch testified that when she first saw CIARA CROW in April 1998, she was huddled in a fetal position underneath the examining table, was unable to walk, had very little language skills, and was very fearful. Now she is walking, with the help of a walker, has developed more language skills, her eating habits have improved, and she has shown great improvement with her social skills in that she interacts well with people. Furthermore, she stated that prior to April 1998, the records at Children's Medical Center indicated missed appointments and that the doctors were glad to see CIARA CROW back. CIARA CROW is doing well in foster care and has made improvements in her language and motor skills. CHERRI RIFFELL, foster mother of CIARA CROW, testified that CIARA CROW has been placed with her for the past two years and that when CIARA CROW first came into her care, she was not walking, said very few words and had little personality. She also testified that now CIARA CROW is walking with a walker is saying more words, is using some sign language, and she is outgoing and willing to try anything. She further testified as to the daily care she provides CIARA CROW, which includes putting on her leg braces, helping her with getting dressed and brushing her teeth, feeding her, which could take up to 45 minutes, as CIARA CROW has a problem with eating and does not like to eat, giving Ciara her seizure medicines as prescribed, and helping her work on her speech and motor skills by reading the notebook from Anthony Wayne and continuing the lessons Ciara worked on at school. Additionally, CHERRI RIFFELL testified that Ciara goes to Anthony Wayne Early Childhood Center four days a week and between all the specialists and doctors, Ciara has, she has to take Ciara to a doctor's appointment approximately two times a month. Finally, she testified that she receives training at the Cerebral Palsy Clinic regarding Ciara's leg braces and walker, has to order special foods for Ciara to help her gain weight, and that she asks questions and actively seeks out help and advice from doctors when a new issue or problem arises with Ciara.
(June 14, 2000 Entry, p. 8-9)
In its decision to award permanent custody of Ciara to CSU, the trial court focused on Tammy's sporadic and inconsistent attendance and progress in her counseling at Darke County Mental Health Clinic. David Kuck, an outpatient therapist at Darke County Mental Health Clinic, performed Tammy's initial assessment and had monitored her progress. He testified that Tammy's attendance at the counseling sessions was inconsistent and sporadic at best, resulting in her case being closed and re-opened several times. Kuck did not believe Tammy had made any progress through her counseling.
Dr. Gordon Harris testified about the psychological evaluations and cognitive reasoning assessments he had performed on Tammy. He found Tammy to be shy and passive, socially immature and lacking in initiative. The trial court focused on Dr. Harris' statement that Tammy "would not likely actively seek out help or assistance for her child on her own initiative," and that Tammy would need counseling to overcome these problems, but that "counseling would not be short term." (June 14, 2000 Entry, p. 12.) The trial court summarized Dr. Harris' assessment of Tammy's ability to parent a special needs child as follows:
 [A]t the time the assessment was completed, TAMMY CROW did have some potential to appropriately parent her daughter, Ciara. However, she would need much support and could benefit from counseling with the focus being on her passive and unassertive approach to dealing with people and her daughter's special needs. Dr. Harris also testified that TAMMY CROW would not take the initiative to seek help when new problems arise concerning her child and that she would need someone to help her take that initiative. He further testified that in his expert opinion that if TAMMY CROW did not receive the appropriate counseling to overcome her passive and unassertive approach she would not be able to parent a special needs child. Finally, Dr. Harris stated that in his expert opinion TAMMY CROW would not have the ability to parent a special needs child if she has another child, an infant, in the home to parent.
(June 14, 2000 Entry, p. 12)
Joanne Beekhuizen, Tammy's outpatient counselor at the time of trial, testified that the sessions she had had with Tammy were not very productive. According to Beekhuizen, Tammy attended only half of the scheduled counseling sessions, and Tammy had indicated to her that she had participated in counseling only because she was being court-ordered to do so, and that she had no issues to address with Beekhuizen. As the trial court stated in its decision:
 Ms. Beekhuizen stated that in her expert opinion TAMMY CROW's general presentation is one of passivity; non-confrontational, non-judgmental, and unassertive. She indicated that the sessions to date have not been very productive, as Tammy was difficult to engage in therapy. Finally, Ms. Beekhuizen testified that in her expert opinion not much progress has been made on the goals neither of the treatment plan nor in the area of TAMMY CROW overcoming her passivity and unassertive personality traits. She further indicated that Tammy has not successfully completed counseling and is still in need of continued counseling.
(June 14, 2000 Entry, p. 15)
Based upon this testimony, we find no abuse of discretion in the trial court's finding that it would be in Ciara's best interest for permanent custody to be granted to CSU. We find that there is clear and convincing evidence that Tammy demonstrated a lack of commitment towards reunification with Ciara, as she did not pay child support, did not comply substantially with the case plan, and showed an unwillingness to provide an adequate permanent home for Ciara. Ciara is a special needs child who requires an extreme amount of care and attention. Tammy's failure to complete counseling, which was necessary for her to successfully parent a special needs child, and Tammy's inability to abide by the no contact order, demonstrated her lack of commitment. Tammy's lack of commitment to care for Ciara was also compounded by her pregnancy at trial, which raises concerns that caring for another baby would further deteriorate her level of commitment to Ciara's needs. As a result, it was in Ciara's best interest for her to be placed in CSU's permanent custody.
Based upon the above facts, we find that there is competent, credible evidence to support the trial court's decision to award permanent custody of Ciara to CSU. Tammy's second assignment of error is overruled. Judgment of the trial court is affirmed.
BROGAN, J. and GRADY, J., concur.