OPINION
On April 9, 1998, appellee, the Stark County Department of Job Family Services, filed a complaint for temporary custody of Brandon Radu born June 28, 1993. Mother of the children is appellant, Lori Radu; father is Morris Radu. On June 29, 1998, the child was adjudicated neglected and was placed in appellee's temporary custody. The child was returned to appellant's custody on September 9, 1999. On February 7, 2000, appellee filed a motion to terminate the case. A hearing before a magistrate was held on March 6, 2000. By decision filed March 7, 2000, approved and adopted by the trial court, the magistrate denied the motion to terminate and ordered appellee to file a motion for either permanent custody or planned permanent living arrangement. On March 9, 2000, appellee filed a motion for permanent custody. A hearing was held on September 1, 2000. By judgment entry filed October 10, 2000, the trial court granted permanent custody of the child to appellee. The trial court also filed findings of fact and conclusions of law. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT COMMITTED AN ERROR AT LAW WHEN IT ALLOWED THE PERMANENT CUSTODY HEARING TO GO FORWARD DESPITE THE FACT THAT SERVICE OF THE MOTION FOR PERMANENT CUSTODY WAS NOT PROPERLY MADE UPON THE APPELLANT, LORI RADU.
 II. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS TO LAW WHEN IT FAILED TO RECOGNIZE THAT THE CHILD COULD BE RETURNED TO APPELLANT WITHIN A REASONABLE TIME.
 III. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AS TO LAW WHEN IT FOUND THAT IT WOULD BE IN THE CHILD'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF THE DEPARTMENT OF JOBS AND FAMILY SERVICES.
 I
Appellant claims she was not properly served with the motion for permanent custody. We disagree. R.C. 2151.414(A)(1) provides that the filing of a motion for permanent custody shall be in accordance with R.C. 2151.29: Upon the filing of a motion pursuant to section 2151.413 of the Revised Code for permanent custody of a child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. The notice also shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights, a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent, and the name and telephone number of the court employee designated by the court pursuant to section 2151.314 of the Revised Code to arrange for the prompt appointment of counsel for indigent persons.
R.C. 2151.29 provides that service of summons shall be made by delivering a copy to the person and by registered or certified mail at the trial court's discretion: Service of summons, notices, and subpoenas, prescribed by section 2151.28 of the Revised Code, shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at his usual place of residence. If the juvenile judge is satisfied that such service is impracticable, he may order service by registered or certified mail. If the person to be served is without the state but he can be found or his address is known, or his whereabouts or address can with reasonable diligence be ascertained, service of the summons may be made by delivering a copy to him personally or mailing a copy to him by registered or certified mail.
Whenever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or his post-office address ascertained, whether he is within or without a state, the clerk shall publish such summons once in a newspaper of general circulation throughout the county. The summons shall state the substance and the time and place of the hearing, which shall be held at least one week later than the date of the publication. A copy of the summons and the complaint shall be sent by registered or certified mail to the last known address of the person summoned unless it is shown by affidavit that a reasonable effort has been made, without success, to obtain such address.
A copy of the advertisement, summons, and complaint, accompanied by the certificate of the clerk that such publication has been made and that such summons and complaint have been mailed as required by this section, is sufficient evidence of publication and mailing. When a period of one week from the time of publication has elapsed, the juvenile court shall have full jurisdiction to deal with such child as provided by sections2151.01 to 2151.99, inclusive, of the Revised Code.
On March 9, 2000, appellee requested certified mail service upon appellant at her last known residence. The service was returned "unclaimed" on April 10, 2000. On said date, service was sent by ordinary mail. On May 2, 2000, the trial court set a hearing on the motion for permanent custody for May 16, 2000. By judgment entry filed May 17, 2000, the trial court continued the hearing until June 29, 2000 due to insufficient service. On May 24, 2000, appellee filed an affidavit for publication. The certification of publication was filed on June 21, 2000. The trial court continued the June 29, 2000 hearing as to appellant until August 22, 2000 for service. On July 5, 2000, appellee filed a praecipe for alias summons of service, restricted delivery, addressed to appellant in care of the Erie County Jail. This praecipe notified appellant of the August 22, 2000 hearing and was sent by certified mail. The praecipe was returned "refused." The praecipe was resent via certified mail on August 4, 2000. It was returned August 9, 2000 signed by "Roberta Davis." Another praecipe addressed to appellant in care of the Stark County Jail was sent via certified mail on August 16, 2000. It was returned August 21, 2000 signed by "Carrie Warehan." On August 22, 2000, the hearing was held wherein appellant appeared but her counsel did not. By judgment entry filed August 23, 2000, the trial court continued the hearing until August 28, 2000. The hearing was then continued again to September 1, 2000. Just prior to this hearing, appellant was served with a copy of the motion. Upon review, we find the service attempted at appellant's last known residence, the service accepted by individuals at the Erie County Jail and the Stark County Jail, the service by publication, appellant's appearance at the August 22, 2000 hearing and the personal service on September 1, 2000 to be facts that establish the trial court's jurisdiction and negate any lack of due process. Appellant's own appearance at the August 22, 2000 hearing and her appearance with counsel at the September 1, 2000 hearing are specific facts that distinguish this case from the two cases cited by appellant, In re Frinzl (1949),152 Ohio St. 164, and In the Matter of Jona G. McCurdy and Teresa L. McCurdy (December 13, 1993), Morrow App. No. 786, unreported. Assignment of Error I is denied.
 II, III
Appellant claims the trial court erred in granting permanent custody of the child to appellee. We disagree. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows: (A) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
(16) Any other factor the court considers relevant.
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
In its findings of fact, the trial court noted appellant received a certificate of completion from Goodwill Parenting classes and completed most of her case plan. However, the trial court also noted appellant's numerous relapses into drug abuse. Norma Thorpe, appellee's caseworker assigned to the case, admitted that appellant is "able to get off the drug for a short period of time and to maintain it as long as she has intensive support systems." T. at 8. However, whenever Mr. Radu is released from jail, appellant gets "back together with him and she immediately relapsed and went back into problems." T. at 9. There was a no contact order between Mr. Radu and the child and "the parents did not comply with that." T. at 12. Over the two year period of appellee's involvement with appellant, appellant was incarcerated several times for shoplifting, in both Pike County and Stark County. T. at 13. Appellant was unable to maintain independent housing. T. at 10. She moved six different times in an approximate two year period, often moving in with others. T. at 11-12. Appellant did not have any contact with the child within the ninety days prior to the hearing. T. at 20. Appellant has not provided any financial support for the child nor any food or clothing. T. at 21. Appellant argues it is inconceivable that appellee returned the child to appellant's care in September of 1999, filed a motion to terminate five months later, and then three days after the hearing on the motion, filed a motion for permanent custody. Ms. Thorpe explained that at the time of the filing of the motion to terminate, Mr. Radu was in jail and appellant was doing "[e]verything she needed to do." T. at 16. However, by the time the hearing on the motion was held, Mr. Radu got out of jail and there was a violation of the no contact order therefore, termination was denied. T. at 17. Appellee decided to file for permanent custody because "the child needed permanency, he'd been through two years of up and down, mom relapsing, she had not been able to maintain stability." Id. Mr. Radu has been in and out of jail over the two year period and "was out for a few months during the entire involvement of the case." T. at 8. He has not complied with the requirements of the case plan. T. at 7, 9. Ms. Thorpe testified that at the time of the hearing, the child was seven years old and was in foster care. T. at 61. The child is "happy, he's outgoing, he's getting lots of love and support, he's doing counseling down there, he's doing well in school and he's excited about it. He's just got a whole new demeanor about his face when you see him." T. at 62. There was a significant improvement in the child's development in the four months of foster care as opposed to the two years with appellant. Id. The foster family has expressed an interest in adopting the child and Ms. Thorpe opined there are no impediments to the foster family being able to adopt. T. at 63. Danielle Burrier, the child's foster mother, testified that she and her husband made a commitment to the child and want to adopt him. T, at 73-74. There was substantial evidence that appellant chose to continue her lifestyle with Mr. Radu over successfully completing the case plan. Appellant suffered from relapses into drug abuse and was incarcerated several times over a two year period. In the meantime, the child was placed in and out of appellee's custody. Based upon the parents' failure to successfully complete the case plan, we find there was clear and convincing evidence to support the trial court's decision to grant permanent custody of the child to appellee. Assignments of Error II and III are denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
Farmer, J. Gwin, P.J. and Wise, J. concur.