OPINION
This is an appeal from the judgment of the Juvenile Division of the Court of Common Pleas of Marion County, which granted permanent custody of Christopher Villa to Marion County Children Services.
On September 13, 1999, the Marion County Children Services Board (Children Services) took temporary custody of Christopher Villa (n.k.a Christopher Arthur) from his mother, Juanita Villa (n.k.a. Juanita Arthur). At the time of his removal from Juanita's home, Christopher was three weeks old. Juanita has asserted that Christopher's father is Jeremy Morgan, however, this has never been verified, and Jeremy has not appeared or shown any interest in this case. Christopher was removed from her home because Juanita failed to obey a court order prohibiting any contact between her son and Chris Morrow, a known sex offender and because Juanita has a long history of substance abuse and domestic violence. Juanita also has a history of being incapable of caring for her children having previously lost custody of her two older children. Since his removal from Juanita's home, Christopher has been diagnosed as having special needs in that he has significant developmental delays and a heart murmur.
Children Services developed a case plan with Juanita which required that she refrain from using alcohol or drugs, complete an alcohol assessment, attend Alcoholics Anonymous (AA) and parenting classes, attend counseling sessions, avoid domestic violence, stay gainfully employed, and maintain a stable home environment. Furthermore, Children Services arranged for Juanita to visit with Christopher three times per week. On June 22, 2000, after determining that 10 months had elapsed since Christopher's removal, and that Juanita had failed to comply with the case plan and failed to remedy the conditions that caused Christopher to be removed from the home, Children Services filed for permanent custody. The permanent custody hearing was scheduled for August 26, 2000, however, because of several administrative problems and Juanita's late arrival to the hearing, the hearing was rescheduled for November 14, 2000.
At the November 14, 2000 hearing, Juanita admitted that she has used alcohol since Christopher was removed from her home and evidence established that she tested positive for marijuana in May of 2000. Further evidence established that she completed her alcohol assessment, however, she has not consistently provided proof of her attendance at AA meetings. While Juanita claims that she has attended numerous meetings and has submitted documentation of these meetings, Children Services can only evidence that Juanita attended meetings between May 15, 2000 and June 20, 2000.
Additionally, evidence established that Juanita failed to show for 62 of 122 scheduled visits with Christopher. Although Children Services provided Juanita with bus tickets, she asserted that she sometimes had problems finding adequate transportation. Juanita also claimed that she missed several visits as a result of illness and complications during her pregnancy. However, no physician's reports were presented to Children's Services.
Evidence further established that Juanita has failed to cooperate with counseling as required by the case plan, has failed to remain gainfully employed and has failed to maintain a stable home environment. Accordingly, while Juanita was enrolled in a work-training program at the time of the hearing, evidence showed that she has not been at any of her prior jobs for an extended period of time. Additionally, Juanita has moved twelve times between August 26, 1999 and the November 14, 2000, the date of the permanent custody hearing. Furthermore, at the time of the hearing and on previous occasions, Juanita was living with another known sex offender after Children Services advised Juanita that this was not acceptable housing.
Moreover, evidence also established that Christopher attends physical and occupational therapy weekly for his developmental delays and the therapist requested that Juanita participate in therapy sessions, as she would have to perform these exercises with Christopher when he came home. An intervention specialist who works with Christopher testified that Juanita only showed up to one or two of his scheduled sessions.
Juanita also testified that in September of 2000, after Juanita attended the initial permanent custody hearing, she and her husband, Josh Arthur, went to Florida traveling by bus. She failed to notify her caseworker that she was leaving and Josh violated his probation from a previous substance abuse charge by taking the trip. Juanita further testified that she eventually called her caseworker at Children Services. The caseworker testified that Juanita told her that she went to Florida in order to find work and because she was worried that Childrens Services would take her new baby upon its birth. The couple returned to Ohio after approximately two weeks.
Based on the evidence adduced at the hearing and a guardian ad litem's report recommending permanent custody be granted to Children Services, the trial court granted permanent custody of Christopher Villa to the Marion County Children Services Board. Juanita appeals asserting five assignments of error. Assignments of error one and three will be discussed together.
 I. The trial court lacked jurisdiction to award permanent custody to Appellee as a result of the improper perfection of notice of publication upon the unknown father.
 III. The trial court lacked jurisdiction to award permanent custody to appellee as a result of the failure [of] service of Appellee's motion requesting modification of temporary commitment to permanent commitment * * * upon the putative father Jeremy Morgan.
In her first and third assignments of error, Juanita alleges defects in service upon Jeremy Morgan, Christopher's alleged father. However, Juanita does not point to any possibility of prejudice to herself resulting from the procedures followed by the juvenile court, and as such, Juanita does not have standing to challenge the propriety of service to him in this case. See In re Sours (Sept. 27, 1988), Hancock App. No. 5-86-38, unreported, at *2. Accordingly, the first and third assignments of error are overruled.
The second assignment of error asserts
 II. The trial court lacked jurisdiction to award permanent custody to Appellee as a result of the failure of service of Appellee's motion requesting modification of temporary commitment to permanent commitment upon appellant.
A juvenile court cannot order a change from temporary to permanent custody without serving a parent with notice of the time and place of the custody hearing within a reasonable time. In re Frinzl (1949),152 Ohio St. 164, paragraph one of the syllabus. A parent may be served personally, by leaving a copy at her usual place of residence or by publication under certain circumstances. R.C. 2151.29. Juanita argues that her notice of the hearing was to be served personally, not left at her residence and as such, she was not properly served. However, failure to raise the adequacy of the notice at the trial level is a waiver of this objection. Juv. R. 22(D); see also In re Shaeffer Children (1993),85 Ohio App.3d 683. As Juanita made no objection to service at the hearing, this objection has been waived.
Moreover, even had there been no waiver, Juanita has not asserted that she has been prejudiced by the delivery method of the notice in any way. Accordingly, despite the alleged defective notice, Juanita elected to appear at the August 26, 2000 hearing. Furthermore, the hearing was postponed to November 14, 2000, which was a date nearly 3 months in the future of which Juanita was fully apprised. Furthermore, Juanita appeared at the November 14, 2000 hearing and participated with counsel. The Appellant has not been prejudiced and her third assignment of error is overruled.
Appellant's fourth assignment of error asserts:
 IV. Assuming arguendo, that appellant waived any jurisdictional arguments due to her failure to raise said issues at the trial, the failure of Appellant's trial counsel to raise such errors constituted ineffective assistance of counsel.
The Supreme Court in Strickland v. Washington announced a two-part test that is to be used to determine ineffective assistance of counsel. (1984), 466 U.S. 668, 687. In In re Kuzel (March 31, 1993), Allen App. Nos. 1-92-89, 1-92-90, unreported, this court approved the holding inJones v. Lucas County Children's Services Bd. (1988), 46 Ohio App.3d 85, which applies the Strickland test to actions that force permanent termination of parental rights.
 First, the defendant must show that the counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 Jones, 46 Ohio App.3d at 86.
In this case, as discussed above, Juanita does not have standing to challenge the service to Jeremy Morgan. Furthermore, Juanita has not shown how the use of an alternate delivery method that is permitted by R.C. 2151.29 that she ultimately received within a reasonable time prior to the hearing prejudiced her in any way. Under these circumstances, there was no deficiency in counsel's performance for failing to raise an issue regarding such service. Appellant's fourth assignment of error is overruled.
Appellants fifth assignment of error asserts:
 The trial [court] erred in awarding permanent custody to Appellee since Appellant rectified the reasons for Christopher Villa Arthur's removal.
In reviewing custody matters, the trial court's determination
 should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.
 Pater v. Pater (1992), 63 Ohio St.3d 393, 396, quoting Miller v.Miller (1988), 37 Ohio St.3d 71, 74. Furthermore, a reviewing court will not overturn the decision of the trial court in a custody case unless there is an abuse of discretion. Miller, 37 Ohio St.3d at 74. An abuse of discretion connotes an attitude that is unreasonable, arbitrary or capricious. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
If a child has been in the temporary custody of Children Services for less than a year, the court may grant permanent custody only upon clear and convincing evidence that (1) permanent custody is in the child's best interest and (2) the child cannot be placed with a parent within a reasonable time or should not be placed with a apparent at all. R.C.2151.414(B)(l)(a).
In considering what is in the child's best interest, a court may consider all relevant factors including but not limited to,
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers, and any other person who may significantly affect the child.
 (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *.
 (4) The child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D). Additionally, in determining whether a child can be placed with a parent within a reasonable time, the trial court must find that, in relevant part, one or more of the following apply,
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home * * *.
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly, support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
 (16) Any other factor the court considers relevant.
R.C. 2151.414(E).
First, we must consider whether granting permanent custody to children's Services is in the best interest of the child. There was testimony that the foster-parents perform the exercises with Christopher recommended by his therapists. Additionally, Christopher was removed from Juanita's home when he was approximately 3 weeks old, resulting in more than a twelve-month period in the custody of Children Services.[1]
Accordingly, as a result of Christopher's developmental delays and his need for therapy and exercises at home, he is in need of a legally secure permanent placement. As Juanita has not been consistent in visiting Christopher, attending Christopher's therapy sessions, finding reliable transportation, or keeping a job and a residence, this cannot be achieved without a grant of permanent custody to the agency. Therefore, we find that there is clear and convincing evidence that granting permanent custody of Christopher to Children Services is in his best interest.
Second, we must consider whether Christopher can be placed with a parent. As noted above, evidence established that Christopher was removed for several reasons including, Juanita's alcohol problems, domestic violence, her history of failing to take care of her children and for allowing Chris Morrow to have contact with her child. While there have been no further reports of domestic violence and there is no evidence that Juanita has continued to associate with Chris Morrow recently, the evidence shows that Juanita has not remedied her alcohol problem and has not created a stable home environment. A chemical dependency counselor testified that Juanita was alcohol dependent that she was told to attend individual counseling, parenting skills group, alcohol and drug education group and then relapse prevention group. She also testified that while Juanita did show up to some sessions of each group, she failed to complete any of the programs. Additionally, while Anita began a recommended intensive outpatient program at Foundations Recovery Center, she never finished the program according to her primary worker. Furthermore, the chemical dependency counselor testified that the prognosis is poor that Juanita would be able to effectively deal with her alcohol problem in the next year.
Furthermore, Juanita has had over a year to complete the case plan and in that time, has failed to show any commitment to her son through regular visitation or creating a secure home. She only visited Christopher 50% of the times that she could have and has only attended one or two of Christopher's therapy sessions. Additionally, Juanita has moved twelve times since Christopher was born and as of the hearing date was living with yet another known sex offender. Moreover, while having knowledge of this permanent custody hearing, Juanita left the state in search of a job without notifying Children's Services. As such, we find that evidence clearly and convincingly establishes a lack of commitment of Juanita to Christopher. On this record, we cannot find that the trial court abused its discretion in finding that an award of permanent custody to Children Services was in Christopher's best interest and that he could not be placed with Juanita in a reasonable period of time.
Accordingly, Appellant's fifth assignment of error is overruled, and the judgment of the Juvenile Division of the Marion County Court of Common Pleas is affirmed.
WALTERS, P.J., and BRYANT, J., concur.
[1] As of the time of filing for permanent custody, Christopher was in the temporary custody of Children Services for 10 months. However, at the time of the hearing, Christopher had been in the temporary custody of Children Services for more than 12 months.