[Cite as *In re R.L.P.*, 2017-Ohio-7359.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF: R.L.P.          :

                                                   CASE NO. CA2017-01-012

                                       :

                                                   O P I N I O N

                                       :                  8/28/2017

                                                   :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2016-0286

O'Connor, Mikita & Davidson LLC, Michael J. O'Connor, 8035 Hasbrook Road, Suite 200, Cincinnati, Ohio 45236, for appellant

Patricia A. Baas, 3091 West Galbraith Road, Suite 102, Cincinnati, Ohio 45239, for appellee

**S. POWELL, P.J.**

{¶ 1} Appellant, a mother ("Mother"), appeals from the decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her son, R.L.P., to appellee, the child's father ("Father"). For the reasons outlined below, we affirm.

{¶ 2} R.L.P. was born on September 13, 2012. Mother and Father were never married. Following R.L.P.'s birth, Mother and Father agreed to a parenting time schedule and for Father to pay Mother child support.

{¶ 3} The following facts are taken from text a message conversation between

Mother and Father that was authenticated by Father and admitted into evidence by the juvenile court. The text messages, including all spelling, spacing, grammar, and punctuation, appear as written by the parties. All other facts are taken from Father's testimony before the juvenile court.

{¶ 4} On the morning of April 22, 2016, the day Mother was supposed to drop R.L.P. off with Father, Mother sent Father a text message informing Father she was "sorry" for not telling him sooner, but she was taking R.L.P. to Florida on vacation to visit her mother for two weeks. In response, Father exhibited frustration with Mother's late notice, wherein he specifically stated "you should have told me!" Once in Florida, Mother was involved in a car accident that totaled her car and prevented her from returning home to Ohio as planned. At the time she left for Florida, it is undisputed that Mother's then address was 3685 Dixie Highway, Hamilton, Butler County, Ohio. It is also undisputed that although Father knew Mother was somewhere in Winter Haven, Florida, Father did not know the specific address where Mother was staying.

{¶ 5} On April 27, 2016, Father texted Mother and asked if he could fly to Florida to pick up R.L.P. and return him to Ohio, which would then allow Mother to find an alternative way home. To this, Mother responded by stating, "[n]o thanks, we'll figure something else out." Thereafter, on May 1, 2016, in response to Father's inquiry as to whether Mother was able to find a new car so that she and R.L.P. could return home to Ohio, Mother informed Father that "[p]lans to come home obviously suspended until we have reliable transportation." The following text exchange then occurred:

> [Father]: Would not take more then a day to find something up here, why want to meet him at airport and fly back with him. You can bus back or what ever. You took this trip with no back up plan, that's very dangerous.
>
> [Mother]: We aren't in any danger. Accidents happen. We're having a fun vacation. No need to worry. I didn't have a back up

plan at home either, a new car is the back up plan. Stop badgering me.

{¶ 6} Approximately one week later, on May 5, 2016, Father filed a complaint for shared parenting or alternatively for parenting time. Father also filed a child custody affidavit that listed Mother's last known address as 3685 Dixie Highway, Hamilton, Butler County, Ohio. Later that day, Father texted Mother and offered to buy her and R.L.P. plane tickets to fly from Florida back home to Ohio. The record does not contain any response from Mother.

{¶ 7} After another week passed, on May 11, 2016, Mother texted Father claiming she had bought a car "but it needs work." The next day, May 12, 2016, Father texted Mother asking if she had any idea when R.L.P. would be back home in Ohio. Mother responded by texting "[i]t's going to cost LOTS to fix the [car], trying to come up with a plan now." Father then texted Mother asking "[w]ill money get him back here!?," to which Mother responded "I'm working on it."

{¶ 8} Prior to this exchange, on May 10, 2016, a notice of the hearing scheduled on Father's complaint for shared parenting was sent to Mother's last known address at 3685 Dixie Highway, Hamilton, Butler County, Ohio, by both regular and certified mail. The certified mailing was returned as undeliverable on May 26, 2016, whereas the ordinary mailing was returned as undeliverable on June 17, 2016. An attempt to personally serve Mother at her last known address in Ohio also failed.

{¶ 9} On May 24, 2016, prior to both mailings being returned, Father again texted Mother and informed her that he was willing to buy both her and R.L.P. plane tickets so that they could fly from Florida back home to Ohio. The following exchange then occurred:

> [Mother]: I'm not magic, I'm poor. And due to bad credit, unable to get a car loan. I bought a lemon bc I don't know cars. Can't come home w/o a car. Trying to find money to fix this one. The harassment isn't helping.
>
> [Father]: You stranded my son in Florida of course I am going to

> do everything to get him home. I am offering an easier way to get him home. You make money at your job here and his homes are here does not make sense you would continue to keep him stranded when you have solutions to resolve this problem.

Once again, the record does not contain any response from Mother.

{¶ 10} One month later, on June 24, 2016, Father texted Mother and asked if there was any progress in Mother fixing her car. Mother simply responded by stating she was "[s]aving for brakes." Approximately three weeks later, on July 12, 2016, Mother texted Father that the brakes on her car were fixed, but that the "leaks" were next. Mother also texted Father that "[b]eing this poor is giving me anxiety, but [R.L.P. is] happy here!"

{¶ 11} Several weeks later, on August 3, 2016, Father again texted Mother and asked when R.L.P. was coming back home to Ohio. Mother responded by stating that she had "[n]o idea" when she and R.L.P. would return to Ohio.

{¶ 12} Two weeks later, on August 18, 2016, Father filed an amended motion for legal custody or in the alternative a motion for parenting time. Although Mother was sent notice that a hearing on these motions would take place on December 2, 2016, the mailing was returned as undeliverable. On August 26, 2016, Father published a notice in compliance with Juv.R. 16(A) notifying Mother of the December 2, 2016 hearing on his motion for legal custody. It is undisputed that Mother did not appear at this hearing.

{¶ 13} At the hearing on Father's motions, Father testified he knew Mother was staying with her mother somewhere in Winter Haven, Florida, but that he did not know the exact address. Father also testified that, despite his repeated requests, Mother refused to give him the address where she was staying. As Father testified, "I just have a rough idea where it is." Father further testified that his efforts to locate the address where Mother was staying through social media and Facebook also proved futile. Father's trial counsel also informed the juvenile court that Father "was afraid if [Mother] knew anything further at this point in time

that she would truly go off the grid and underground."

{¶ 14} Later that day, in light of Father's uncontested testimony, the magistrate issued a decision granting legal custody of R.L.P. to Father. As part of this decision, the magistrate determined that Father last saw R.L.P. on April 18, 2016 just prior to Mother leaving for Florida. The magistrate further determined that, despite Father's efforts, Mother "has not disclosed her whereabouts" and has not provided Father "any information as to where the child and Mother currently live." Shortly after this order was issued, on December 12, 2016, Father traveled to Winter Haven, Florida and retrieved R.L.P. from Mother with the assistance of local law enforcement.

{¶ 15} On December 16, 2016, Mother filed objections to the magistrate's decision arguing the decision to grant Father legal custody of R.L.P. was against the manifest weight of the evidence. Mother also argued that the magistrate's decision should be reversed since she never received notice of the December 2, 2016 hearing on Father's motion for legal custody. On December 22, 2016, after holding a hearing on the matter, the juvenile court denied Mother's objections and affirmed and adopted the magistrate's decision in its entirety. Several days later, on December 27, 2016, the magistrate issued an amended decision to correct several clerical errors within its original decision, a decision the juvenile court subsequently affirmed and adopted later that day.

{¶ 16} Mother now appeals from the juvenile court's decision, raising a single assignment of error for review.

{¶ 17} THE TRIAL COURT ERRED IN GRANTING FATHER CUSTODY.

{¶ 18} In her single assignment of error, Mother argues the juvenile court erred by granting Father legal custody of R.L.P. because she never received notice of the December 2, 2016 hearing on Father's motion. We disagree.

{¶ 19} "The jurisdiction of the juvenile court does not attach until notice of the

- 5 -

proceedings has been provided to the parties." *In re Miller*, 33 Ohio App.3d 224, 225-226 (8th Dist.1986). Pursuant to Juv.R. 16(A), except as otherwise provided, "summons shall be served as provided in Civil Rules 4(A), (C), and (D), 4.1, 4.2, 4.3, 4.5 and 4.6." The rule further states that "when the residence of a party is unknown and cannot be ascertained with reasonable diligence, service shall be made by publication." Continuing, the rule states:

> Before service by publication can be made, an affidavit of a party or party's counsel shall be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the person is unknown to the affiant and cannot be ascertained with reasonable diligence and shall set forth the last known address of the party to be served.

Thus, "[p]ublication service is reserved for those cases in which the residence of the parent is unknown and is not ascertainable with reasonable diligence." *In re R.P.*, 9th Dist. Summit No. 26271, 2012-Ohio-4799, ¶ 18.

{¶ 20} In this case, Father attempted service of process on Mother through both certified and ordinary mail at her last known address, 3685 Dixie Highway, Hamilton, Butler County, Ohio. All of these mailings were returned as undeliverable. The record also indicates Father repeatedly asked Mother for the address where she was staying in Florida, but that Mother refused to provide Father with the address. Although Mother claims Father never asked for her address, the magistrate clearly found Father's testimony credible. The record further indicates that Father attempted to ascertain Mother's address through social media and Facebook, efforts which ultimately proved futile.

{¶ 21} Father's affidavit submitted to the juvenile court detailed the efforts Father took in order to discover Mother's address where she was staying in Florida. None of those efforts were successful. Therefore, while Mother claims otherwise, because Father used reasonable diligence in attempting to serve her with notice of the December 2, 2016 hearing before the juvenile court magistrate, and otherwise fully complied with the juvenile rules to

perfect service of process on Mother through publication, we find no error with the juvenile court's decision to grant legal custody of R.L.P. to Father. Accordingly, Mother's single assignment of error is without merit and overruled.

{¶ 22} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.