[Cite as *In re J.T.*, 2019-Ohio-465.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 18CA9 |
| | : | |
| J.T. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| ALLEGED UNRULY CHILD | : | |
| | : | **Released: 02/05/19** |

APPEARANCES:

Dana E. Gilliland, Wellston, Ohio, for Appellant.

Timothy E. Forshey, Jackson, Ohio, for Appellee.

McFarland, J.

{¶1} Appellant, the child's biological mother, appeals the trial court's judgment that granted Appellee, Jackson County Department of Job and Family Services, permanent custody of her teenage son. Appellant raises two assignments of error. She first contends that the trial court deprived her of her parental rights without due process of law. Appellant asserts that the trial court did not provide her with adequate notice and a meaningful opportunity to be heard before the court granted Appellee permanent custody of her child. We agree. The trial court did not comply with the procedural protections developed to ensure that a parent facing termination of parental rights receives adequate notice of the permanent custody hearing.

Accordingly, we sustain appellant's first assignment of error and reverse the trial court's judgment. Appellant's second assignment of error is moot.

## I. FACTS

{¶2} On September 15, 2017, the child's stepmother filed a complaint that alleged the child is unruly. The complaint averred that the child currently lives with his father and stepmother. The complaint made no mention of Appellant, the child's biological mother. The court later found "that the Summons and Notice heretofore issued have been duly served upon the parents of said child."

{¶3} At a pretrial hearing, the court explained that it learned that the father and stepmother had surrendered the child and stated that they could no longer manage the child. The court stated that it would "be changing the nature of the case" and entered a finding that the child is dependent. Thus, although the case began as an unruly child complaint, the trial court subsequently adjudicated the child dependent and placed the child in Appellee's temporary custody.

{¶4} About eight months later, Appellee filed a motion to modify the disposition to permanent custody. Appellee alleged that the child should not be placed with either parent. Appellee asserted that the child's father and stepmother told Appellee that they no longer want the child in their home.

Appellee claimed that the child's biological mother, Appellant, "has been in contact with [the] agency once."

{¶5} Appellee's motion for permanent custody included a certificate of service stating that Appellee served the motion upon the child's guardian ad litem and upon "Josh Price, attorney for mother." The record shows, however, that the court appointed "Joshua Price" as counsel for the child.

{¶6} Appellee filed a request for service along with its permanent custody motion and asked the clerk to serve Appellant "with a copy of the motion requesting modification of temporary commitment to permanent commitment by personal service, at 688 Ridge Gap Road, Rockwood, TN 37854." The clerk's office then sent a request for service to the Roane County Sheriff's Department to personally serve Appellant with the "attached Summons, Motion Requesting Modification of Temporary Commitment to Permanent Commitment, * * * and Notice of Permanent Custody hearing set for September 28, 2018, at 9:00 a.m."

{¶7} The "Notice of Permanent Custody" states that the court issued the notice to the attorneys, guardian ad litem, Appellee, the father, and Appellant that reads: "You are hereby notified that the Court has set the above-captioned matter for permanent custody hearing on September 28, 2018, at 9:00 A.M." A deputy clerk signed the notice. The notice does not

indicate how it was served upon the parties and does not contain any addresses for the parties.

{¶8} The request to the Roane County Sheriff's Department was returned with a handwritten note that reads: "Address provided is not in Roane County." Another handwritten note indicates that the address is in Cumberland County.

{¶9} On July 5, 2018, the clerk's office issued a request for service to the Cumberland County Sheriff's Department, and asked the Sheriff's Office to make personal service upon Appellant at 688 Ridge Gap Road, Rockwood, TN 37854."

{¶10} On August 20, 2018, Appellee requested the clerk to serve Appellant by publication. Appellee submitted an affidavit for service by publication that reads:

> Tara Gilliland, * * * states that the present addresses of [the father and Appellant] are unknown to affiant and cannot with reasonable diligence be ascertained. Affiant further states that efforts made to learn the address of said parties include the following: the computer database searches available. Affiant further states that service of summons cannot be made * * *.

{¶11} The clerk requested "The Telegram," located in Jackson, Ohio, to publish a notice that reads as follows:

> [The father, the stepmother, and Appellant] will take notice that a Motion for Modification of Temporary Commitment to Permanent Commitment has been filed in Jackson County, Ohio Juvenile Court

concerning the child * * * that said Motion will be set for hearing before the said Court in Jackson County, Ohio on the 28th day of September, 2018, at 9:00 a.m. at Juvenile Court, Jackson County Court House, 350 Portsmouth Street, Ste. 101, Jackson, Ohio 45640; and [the parties] are ordered to appear before said Court on said date and show cause why the Motion should not be granted.

The notice also included the following statement:

Any party is entitled to a lawyer in all proceedings in Juvenile Court. If a party cannot afford a lawyer and meets certain requirements, the Court will appoint one upon request. If you wish to have a lawyer, but believe you cannot afford one, call 740-286-6405 at Juvenile Court at Jackson, Ohio between the hours of 8:00 a.m. and 4:00 p.m. Monday through Friday.

{¶12} The Telegram later certified that it published the notice on August 29, 2018.

{¶13} On September 28, 2018, the court held a hearing to consider Appellee's motion for permanent custody. At the start, Appellee's counsel stated that he did not "believe the child's mother, [Appellant], has really had any contact with [Appellee] other than once since the case has been going." The court stated: "Well, we've had no contact with her from the court to ask for counsel or …other than… we haven't had any contract from her, have we?" The court reporter responded, "No." The court then proceeded with the hearing.

{¶14} At the hearing, caseworker Tara Gilliland stated that she had one contact with Appellant. Gilliland explained that on May 29, 2018, she

sent a letter to Appellant that requested Appellant to contact the caseworker about Appellant's child. Gilliland stated that about one week later, Appellant contacted her. Gilliland indicated that when Appellant called, Gilliland had been preparing for a home visit and was not "able to verify any information at that time." Gilliland stated that Appellant "asked what was happening with [the child]" and whether the father "was ok; if there was a reason why he didn't have [the child], but that was about as far as the conversation had got." Gilliland further explained that when she spoke with Appellant, Appellant did not indicate that she would like to have custody of the child.

{¶15} Gilliland related that Appellant spoke with Gilliland's supervisor, as well, but Appellant "refused to give us a call back number and said that she would call back." Gilliland testified that she later sent Appellant another letter and asked Appellant to contact the agency. Gilliland stated that Appellant did not have any additional contact with Appellee.

{¶16} On October 9, 2018, a return of personal service was filed that indicated that on September 25, 2018, the Cumberland County Sheriff had personally served Appellant.

{¶17} On October 22, 2018, the trial court granted Appellee's motion for permanent custody. The court found that Appellant "was served, but did not appear." The court additionally determined that Appellant "only had contact with the caseworker once and has not appeared at any hearings." The court further stated that "the mother has not attended any hearings, has only contacted children's services once during the course of the case and appears to have had little, if any, contact with the child. The mother has shown <u>NO</u> interest in [the child] and has, therefore, effectively abandoned him * * *." (Emphasis sic.).

{¶18} The court determined that the child's father and stepmother "decide[d] it is better to hike the Appalachian Trail than engage in case plan services." The court noted that the father and stepmother informed Appellee that they did not want the child to return to their home. The court found that the child could not be placed with either parent and that it is in his best interest to place the child in Appellee's permanent custody.

{¶19} On October 23, 2018, Appellee requested the court to enter a reasonable efforts finding. Appellee asserted that the caseworker attempted to contact Appellant "by sending letters." Appellee alleged that Appellant did call once, but she did not provide any contact information.

{¶20} Two days later, the court made the reasonable efforts finding that Appellee requested and made its finding "effective as of September 27, 2018." The court found that the caseworker attempted to contact Appellant and that although Appellant called Appellee, the mother did not give Appellee any contact information.

{¶21} On October 29, 2018, the court appointed counsel for the mother for purposes of appeal. This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶22} Appellant timely appealed and raises two assignments of error:

First Assignment of Error:

"The trial court lacked personal jurisdiction over the mother to proceed to trial violating the mother's right to substantive and procedural due process."

Second Assignment of Error:

"The trial court's decision to terminate mother's parental rights was an abuse of discretion and against the manifest weight of the evidence as a result of the due process violations against the mother."

## III. ANALYSIS

### A.

### Procedural Issue

{¶23} We first observe that the mother filed a Civ.R. 59 new trial motion. App.R. 4(B)(2)(b) states that a "timely and appropriate" new trial

motion filed in a juvenile proceeding tolls the time for filing a notice of appeal until the trial court enters a judgment that disposes of the new trial motion. The rule further provides:

> If a party files a notice of appeal from an otherwise final judgment but before the trial court has resolved one or more of the filings listed in this division, then the court of appeals, upon suggestion of any of the parties, shall remand the matter to the trial court to resolve the post-judgment filings in question and shall stay appellate proceedings until the trial court has done so.

{¶24} Here, none of the parties have suggested that we remand the matter to the trial court to resolve Appellant's new trial motion and stay the appellate proceedings until the trial court has done so.[1] We decline to do so sua sponte under the circumstances present in the case at bar.

B.

Due Process

{¶25} In her first assignment of error, Appellant contends that the trial court's permanent custody decision violates her rights to substantive and procedural due process. Appellant asserts that the trial court did not provide her with adequate notice and an opportunity to participate in the permanent custody proceedings. She thus asserts that the court's permanent custody decision deprives her of her fundamental parental rights without due process

---

[1] We observe that Appellant sought a stay of the trial court's judgment, but she did not seek to stay the appellate proceedings in order to allow the trial court to rule on her motion for a new trial.

of law.  Appellant contends that the court's permanent custody decision is therefore void.

{¶26} Appellant recognizes that Appellee issued notice by publication, but she claims that the publication notice is defective. Appellant argues that Appellee first had to attempt service by certified or regular mail before resorting to service by publication.  Appellant asserts that service by publication is a method of last resort.

{¶27} Appellant additionally argues that the affidavit Appellee submitted to support its request for service by publication is defective.  She points out that the affidavit avers that Appellee had been unable to locate Appellant's address, but the record shows that Appellee previously requested personal service upon Appellant at a known address.

{¶28} The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides:  "No person shall * * * be deprived of life, liberty, or property, without due process of law."  "[P]arents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by this Court.' " *In re B.C.,* 141 Ohio St.3d 55, 2014–Ohio–4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).  Indeed,

the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (stating that "natural parents have a fundamental right to the care and custody of their children").  Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re Perales,* 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer,* 32 Ohio St. 299, 310 (1877); *Murray,* 52 Ohio at 157.

{¶29} Additionally, the Ohio Supreme Court has described the permanent termination of parental rights as " 'the family law equivalent of the death penalty in a criminal case.' " *Hayes,* 79 Ohio St.3d at 48, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Consequently, courts must afford parents facing the permanent termination of their parental rights " 'every procedural and substantive protection the law allows.' " *Id.*, quoting *Smith* at 16, 601 N.E.2d 45; *accord B.C.* at ¶ 19. Thus, because parents possess a fundamental liberty interest in the care and custody of their children, the state may not deprive parents of their parental rights without due process of law. *In re James,* 113 Ohio St.3d 420, 2007–Ohio–2335, 866 N.E.2d 467, ¶ 16; *e.g., In re A.G.,* 4th Dist. Athens No.

14CA28, 2014-Ohio-5014, 2014 WL 5812193, ¶ 12; *In re M.H.,* 4th Dist. Vinton No. 11CA683, 2011–Ohio–5140, ¶¶ 49–50. Moreover, a parent's right to due process "does not evaporate simply because" that parent has "not been [a] model parent[] or [has] lost temporary custody of their child to the State." *Santosky,* 455 U.S. at 753.

{¶30} Although "due process" lacks precise definition, courts have long held that due process requires both notice and an opportunity to be heard. *In re Thompkins,* 115 Ohio St.3d 409, 2007–Ohio–5238, 875 N.E.2d 582, ¶ 12, citing *Hagar v. Reclamation Dist. No. 108,* 111 U.S. 701, 708, 4 S.Ct. 663, 28 L.Ed. 569 (1884); *Caldwell v. Carthage,* 49 Ohio St. 334, 348, 31 N.E. 602 (1892). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *accord In re Thompkins* at ¶ 13.

{¶31} Moreover, given the importance of the parent-child bond, "a Juvenile Court cannot make a valid order changing temporary commitment of a dependent child to a permanent one without a service of notice upon the

parent of the child, strictly in accordance with the law." *In re Frizl*, 152 Ohio St. 164, 173, 87 N.E.2d 583 (1949); *accord In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, 2010 WL 5541112, ¶ 43, quoting *In re Cowling,* 72 Ohio App.3d 299, 500–501, 595 N.E.2d 470 (9th Dist.1991). Accordingly, if a court fails to serve a summons to a parent in compliance with the procedural rules, then it lacks personal jurisdiction over the parent. *In re Z.H.,* 2013–Ohio–3904, 995 N.E.2d 295, ¶ 14 (9th Dist.). " 'It is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant." ' *State ex rel. Doe v. Capper,* 132 Ohio St.3d 365, 2012–Ohio–2686, 972 N.E .2d 553, ¶ 13, quoting *Maryhew v. Yova,* 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984). " '[A] judgment rendered without proper service or entry of appearance is a nullity and void.' " *State ex rel. Ballard v. O'Donnell,* 50 Ohio St.3d 182, 183–184, 553 N.E.2d 650 (1990), quoting *Lincoln Tavern, Inc. v. Snader,* 165 Ohio St. 61, 64, 133 N.E.2d 606 (1956); *e.g., Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bod. of Revision,* 119 Ohio St.3d 233, 2008–Ohio–3192, 893 N.E.2d 457, ¶ 20; *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision,* 87 Ohio St.3d 363, 366–367, 721 N.E.2d 40 (2000). "Thus, a valid court judgment requires both proper service under the applicable Ohio rules and adequate notice under the Due Process Clause." *In re A.G.*, 4th

Dist. Athens No. 14CA28, 2014-Ohio-5014, 2014 WL 5812193, ¶ 14, citing

*Sampson Sales, Inc. v. Honeywell, Inc.,* 66 Ohio St.3d 290, 293, 421 N.E.2d

522 (1981).

{**¶32**} When the state seeks to interfere with a parent's liberty interest

in the care, custody, and management of his or her child, the Due Process

Clause requires the state to "*attempt* to provide actual notice" to the parents.

*Thompkins* at ¶ 14 (emphasis sic.), citing *Dusenbery v. United States,* 534

U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).  Due process does

not, however, require the state to undertake "'heroic efforts'" to provide

actual notice. *Id.,* quoting *Dusenbery,* 534 U.S. at 170.  Additionally, due

process does not require that a parent receives actual notice before the state

may permanently sever the parent-child relationship. *Id.*  Instead, the state

satisfies its due process obligation to provide notice and an opportunity to be

heard if the state employs means that are "reasonably calculated" to inform

the parent of the proceeding involving his or her child. *In re A.G.*, 139 Ohio

St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, 2014 WL 2766200, ¶ 64.

Furthermore, the state must exercise "reasonable diligence in attempting to

notify [parents] that [their] parental rights [are] subject to termination."

*Thompkins* at ¶ 15; *In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-

6374, 2010 WL 5541112, ¶ 49.

{¶33} In general, "reasonable diligence" means " '[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity.' " *Thompkins* at ¶ 25, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), quoting Black's Law Dictionary (5 Ed.1979), 412. "[W]hat constitutes reasonable diligence will depend on the facts and circumstances of each particular case." *Sizemore*, 6 Ohio St.3d at 332. Essentially, however, " '[r]easonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address.' " *Thompkins* at ¶ 25, quoting *Sizemore* at 332. " 'Minimal efforts do not constitute 'reasonable diligence;' rather it is demonstrated by such diligence, care, or attention as might be expected from a person of ordinary prudence and activity.' " *S.S.* at ¶ 49, quoting *Cowling,* 72 Ohio App.3d at 502.

{¶34} "[S]teps taken in the effort to exercise reasonable diligence might include consulting a city directory, examining government records, or making inquiries of possible acquaintances of the person sought." *Thompkins* at ¶ 26, citing *Sizemore* at 332. These steps are not, however, "mandatory." Instead, the steps "exemplify that reasonable diligence

requires [the use of] common and readily available sources" in the search.

*Id.*

{¶35} As a general matter, R.C. Chapter 2151 adequately protects the

due process rights of parents facing the termination of their parental rights.

*In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶¶ 25-27

(rejecting claim that due process requires delayed appeal in permanent

custody proceedings and instead holding that "statutory protections already

ensure that a parent faced with termination of parental rights has the

opportunity to participate in the proceedings fully, with notice,

representation, and the remedy of an appeal"). R.C. 2151.414 governs the

procedure upon the filing of a permanent custody motion. The statute states

that upon the filing of a permanent custody motion, "the court shall schedule

a hearing and give notice of the filing of the motion and of the hearing, in

accordance with section 2151.29 of the Revised Code, to all parties to the

action." R.C. 2151.414(A)(1). The statute additionally requires the notice

to contain a full explanation that the granting of permanent custody

permanently divests the parents of their parental rights, a full explanation of

their right to be represented by counsel and to have counsel appointed

pursuant to Chapter 120. of the Revised Code if they are indigent, and the

name and telephone number of the court employee designated by the court

pursuant to section 2151.314 of the Revised Code to arrange for the prompt

appointment of counsel for indigent persons. *Id.*

{¶36} We begin our analysis by examining the requirement set forth

in R.C. 2151.414(A)(1) that the trial court give notice of the permanent

custody motion and hearing in accordance with R.C. 2151.29.

{¶37} R.C. 2151.29 states:

> Service of summons, notices, and subpoenas, prescribed by
> section 2151.28 of the Revised Code, shall be made by delivering a
> copy to the person summoned, notified, or subpoenaed, or by leaving
> a copy at the person's usual place of residence.  If the juvenile judge
> is satisfied that such service is impracticable, the juvenile judge may
> order service by registered or certified mail.  If the person to be served
> is without the state but the person can be found or the person's
> address is known, or the person's whereabouts or address can with
> reasonable diligence be ascertained, service of the summons may be
> made by delivering a copy to the person personally or mailing a copy
> to the person by registered or certified mail.
> Whenever it appears by affidavit that after reasonable effort the
> person to be served with summons cannot be found or the person's
> post-office address ascertained, whether the person is within or
> without a state, the clerk shall publish such summons once in a
> newspaper of general circulation throughout the county.  The
> summons shall state the substance and the time and place of the
> hearing, which shall be held at least one week later than the date of
> the publication.  A copy of the summons and the complaint,
> indictment, or information shall be sent by registered or certified mail
> to the last known address of the person summoned unless it is shown
> by affidavit that a reasonable effort has been made, without success,
> to obtain such address.
> A copy of the advertisement, the summons, and the complaint,
> indictment, or information, accompanied by the certificate of the clerk
> that such publication has been made and that the summons and the
> complaint, indictment, or information have been mailed as required by
> this section, is sufficient evidence of publication and mailing.  When a

period of one week from the time of publication has elapsed, the
juvenile court shall have full jurisdiction to deal with such child as
provided by sections 2151.01 to 2151.99 of the Revised Code.

**{¶38}** R.C. 2151.29 specifically addresses the situation when, as here,

the parent to be served does not live in the State of Ohio.[2]  R.C. 2151.29

permits service upon an out-of-state parent to be made personally or by

registered or certified mail, so long as "the person's address is known, or the

person's whereabouts or address can with reasonable diligence be

ascertained."  Service may be by publication "[w]henever it appears by

affidavit that after reasonable effort the person to be served with summons

cannot be found or the person's post-office address ascertained." *Id.*  Service

by publication thus "is reserved for those cases in which the residence of the

parent is unknown and is not ascertainable with reasonable diligence." *In re*

*R.P.*, 9th Dist. Summit No. 26271, 2012–Ohio–4799, ¶ 18; *accord In re*

*R.L.P.*, 12th Dist. Butler No. CA2017-01-012, 2017-Ohio-7359, 2017 WL

3701165, ¶ 19.  Service by publication essentially "is a method of last

resort."  Yeomans and Salvador, Ohio Juvenile Law, Section 13:4 (footnote

omitted); *In re Miller,* 33 Ohio App.3d 224, 226, 515 N.E.2d 635 (1986).

**{¶39}** Accordingly, in the case at bar, serving Appellant by

publication was a valid means of service if the state (Appellee and the trial

---

[2] We note that the Juvenile Rules of Procedure contain similar provisions.

court)[3] made reasonable efforts to locate Appellant or her post-office address but could not. That is, serving Appellant by publication was a valid means of notifying Appellant that her parental rights were subject to termination if the state did not know Appellant's address and could not ascertain it by exercising reasonable diligence.

{¶40} Service by publication is a valid means of notifying a parent of a permanent custody proceeding when a children services agency attempts certified mail and the postal service returns the mailing as, "Attempted Not Known." *Thompkins* at ¶ 2. Therefore, when the postal service returns the mailing as, "Attempted Not Known," reasonable diligence does not require an agency to attempt to serve a parent by ordinary mail before resorting to service by publication.

{¶41} In *Thompkins*, the court held that the agency exercised reasonable diligence in attempting to serve the parent even though the agency had not attempted to serve the parent by ordinary mail before resorting to service by publication. *Id.* The record in *Thompkins* established that the agency first attempted to personally serve the parent at a Dayton address. *Id.* at ¶ 4. The process server was not successful and reported that the parent had not lived at the Dayton address for nearly one year. *Id.* The

---

[3] We observe that R.C. 2151.414(A)(1) requires the trial court to give the parties notice of

agency then filed an affidavit for service by publication. *Id.* The agency alleged that the parent could not be served by summons because his address was unknown and the agency could not ascertain it with reasonable diligence. *Id.* A newspaper of general circulation subsequently published a notice of the upcoming hearing. *Id.*

{¶42} The agency also tried to serve the parent by certified mail sent to a Columbus address. *Id.* at ¶ 5. The postmaster returned the certified letter as "Attempted Not Known." *Id.*

{¶43} Although the parent had not been located, the trial court appointed counsel to represent the parent. *Id.* at ¶ 6. Counsel appeared at the permanent custody hearing and asserted that the trial court lacked personal jurisdiction over the parent due to a failure of service. *Id.* A magistrate determined that the agency properly served the parent by publication and proceeded with the permanent custody hearing. *Id.*

{¶44} After the court granted the agency permanent custody of the child, the parent's counsel objected to the magistrate's decision. *Id.* Counsel alleged that the court lacked personal jurisdiction over the parent. *Id.* The trial court disagreed and adopted the magistrate's decision. *Id.* The parent's counsel then filed a notice of appeal.

---

the filing of the motion and hearing.

**{¶45}** On appeal, the appellate court agreed that the trial court lacked jurisdiction over the parent. *Id.* at ¶ 7. The court noted that when a children services agency seeks to terminate parental rights, Juv.R. 16 requires the agency to exercise reasonable diligence when attempting to serve the parents. *Id.* The appellate court concluded that reasonable diligence requires the agency to attempt to serve the parents in accordance with Civ.R. 4(A), (C), and (D), 4.1, 4.2, 4.3, 4.5, and 4.6 before resorting to service by publication. *Id.* The court determined that the "Attempted Not Known" notation on the certified mail envelope required the agency to attempt service by ordinary mail. *Id.* at ¶ 8. The court thus concluded that because the agency did not attempt service by ordinary mail, the agency did not exercise reasonable diligence in attempting to serve the parent before resorting to service by publication. *Id.* The appellate court therefore determined that service by publication was insufficient and that the trial court lacked personal jurisdiction over the parent. *Id.*

**{¶46}** On further appeal to the Supreme Court of Ohio, counsel for the parent again argued that the trial court lacked personal jurisdiction over the parent. The Supreme Court disagreed. The court instead examined the Juvenile and Civil Rules of Procedure, as well as R.C. 2151.29, and concluded that service by publication satisfies due process when the agency

first attempts certified mail and the post office returns the mail as,

"Attempted Not Known." The court explained:

> When a postal return reads "Attempted Not Known," no purpose would be served by a follow-up ordinary mail letter sent to the same address. The "Unclaimed" designation implies that the person may in fact reside or receive mail at the designated address but for whatever reason has chosen not to sign for the certified mail. In that situation, a follow-up communication by ordinary mail is reasonably calculated to provide the interested party with notice and an opportunity to be heard. Such a communication, not returned, bears a strong inference that the intended recipient received the letter. This is not so, however, with ordinary mail following the return of a certified letter with the endorsement "Attempted Not Known." The inference then is that the intended recipient does not reside or receive mail at the designated address and is not known to the residents there. A follow-up letter in these circumstances would not permit a similar inference of receipt. *Id.* at ¶ 23.

{¶47} The *Thompkins* court thus concluded that the agency complied

with the rules by attempting to personally serve the parent, by attempting to

serve the parent by certified mail, and by publishing a notice in a newspaper

of general circulation. *Id.* at ¶ 24. The court disagreed that "the Due Process

Clause required the board to attempt service * * * by ordinary mail" before

it could obtain service by publication. *Id.* The court observed that the

endorsement on the returned certified letter, "Attempted Not Known,"

"clearly demonstrated that [the parent] did not reside and was not known at

the [listed] address." *Id.* The court thus concluded that "any ordinary mail

addressed to him at that address could not be reasonably calculated to give

him notice and an opportunity to be heard at the permanent-custody

proceeding." *Id.*  The court hence reversed the appellate court's judgment.

{¶48} Here, we do not believe that serving Appellant by publication

complied with the due process requirement that service be reasonably

calculated to provide her with notice and an opportunity to be heard at the

permanent custody hearing.  Moreover, Appellee did not exercise reasonable

diligence in attempting to serve Appellant with notice that she faced the

termination of her parental rights.  First, unlike the situation in *Thompkins*

where a returned certified mailing showed that the address for the parent was

"Attempted Not Known," here the record does not contain any evidence that

Appellant's address was attempted and not known.  The first attempt to

personally serve Appellant was returned, not with a notation that the address

was unknown, but rather, with a notation that the clerk's office sent the

request to the wrong county in Tennessee.  The clerk's office immediately

sent another request for personal service to the correct county in Tennessee.

{¶49} After approximately forty-five days, the second request for

service had not been returned.  Appellee then requested service by

publication.  Appellee submitted the caseworkers' affidavit in support of its

request.  The caseworker's affidavit for service by publication avers that

Appellant's address is "unknown to affiant and cannot with reasonable

diligence be ascertained." It continues: "Affiant further states that efforts made to learn the address of said parties include the following: the computer database searches available." The affidavit also asserted "that service of summons cannot be made."

{¶50} We do not think Appellee showed that Appellant's address could not with reasonable diligence be ascertained. First, although the caseworker indicated in her affidavit for service by publication that Appellant's address was unknown, the caseworker testified at the permanent custody hearing that on May 29, 2018, she sent Appellant a letter. The caseworker stated that eight days later, Appellant called the caseworker in response. The caseworker gave no indication that the letter was returned due to an unknown address. This evidence suggests that the address where the caseworker sent the letter was a valid post-office address. Thus, the caseworker's testimony shows that Appellee could reasonably ascertain, and did in fact ascertain, Appellant's post-office address. Because Appellee had in fact ascertained Appellant's address, R.C. 2151.29 required the state to serve Appellant either personally or by registered or certified mail.

{¶51} Under R.C. 2151.29, service by publication is proper "[w]henever it appears by affidavit that after reasonable effort the person to be served with summons cannot be found or the person's post-office address

ascertained."  Because the evidence shows that Appellant's post-office

address not only could, but was, ascertained, we do not think the agency

properly invoked the service-by-publication rule. *Dragich v. Dragich,* 10th

Dist. No. 86AP–178, 1986 WL 10409, at *1 ("Service by publication based

upon a false affidavit is defective."); *see generally PHH Mtge. Corp. v.*

*Prater*, 133 Ohio St.3d 91, 2012-Ohio-3931, 975 N.E.2d 1008, ¶ 12, quoting

*Cent. Trust Co., N.A. v. Jensen,* 67 Ohio St.3d 140, 143, 616 N.E.2d 873

(1993) (stating that " '[w]hen a party's address is known or easily

ascertainable and the cost of notice is little more than that of a first-class

stamp, the balance will almost always favor notice by mail over

publication' "); *Cent. Trust* (holding that notice by publication to a person

with a property interest in a proceeding is insufficient when that person's

address is known or easily ascertainable).  Instead, according to *Thompkins*,

the agency first should have attempted service by certified mail.  Service by

registered or certified mail would have been reasonably calculated to

provide Appellant notice of the permanent custody motion and hearing.

Moreover, when a children services agency has not received notice from the

process server or the post office that the address attempted is unknown,

ordinary prudence would seem to dictate that the agency attempt service by

registered or certified mail before serving by publication.

**{¶52}** We observe that on September 25, 2018, appellant was personally served with notice of the permanent custody proceedings. Unfortunately, the return was not filed with the clerk's office until October 9, 2018, eleven days after the permanent custody hearing had concluded.

> A requirement that notice be served of the time and place of hearing in reference to a permanent commitment means a notice reasonably in advance of such time so that the parent notified may have ample opportunity to secure counsel and prepare to resist the application to make the temporary commitment permanent.

*In re Frinzl*, 152 Ohio St. 164, 172–73, 87 N.E.2d 583, 587–88, 39 O.O. 456 (1949) (concluding that one-hour notice insufficient). We question whether three days' notice to a parent who lives in Tennessee constitutes adequate time to allow the parent to have ample opportunity to secure counsel and prepare to resist the permanent custody motion. Nevertheless, even if we overlook the timing of the personal service, more fundamentally, the notice personally served did not comply with R.C. 2151.414(A)(1).

**{¶53}** As we stated earlier, R.C. 2151.414(A)(1) requires the court to include in its notice each of the following: (1) "a full explanation that the granting of permanent custody permanently divests the parents of their parental rights," (2) "a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent," and (3) "the name and telephone number

of the court employee designated by the court pursuant to section 2151.314 of the Revised Code to arrange for the prompt appointment of counsel for indigent persons." The record does not reveal that the notice personally served upon Appellant contained any of the above information. The notice that the court issued with its request for personal service states simply: "You are hereby notified that the Court has set the above-captioned matter for Permanent Custody Hearing on September 28, 2018, at 9:00 a.m." The notice is printed on the court's letterhead, which contains a phone number, but the notice does not advise Appellant of the legal effect of granting permanent custody, of her right to counsel, or the name of an employee designated to assist indigent parents.

{¶54} Moreover, although the request for service indicates that the documents to be served included a summons, the record submitted on appeal does not contain a copy of a "summons." Additionally, none of the other documents requested to be served upon Appellant appear to be a "summons." *See* Juv.R. 15(B) (describing contents of a summons). We thus are unable to determine whether the summons contained any of the above information.

{¶55} Thus, even if we presumed that three days' advance notice of a permanent custody hearing to an out-of-state parent constituted sufficient

notice, the notice actually served upon Appellant did not contain the information that R.C. 2151.414(A)(1) requires.  It therefore was deficient.

{¶56} Any claim that Appellant had adequate notice of the permanent custody proceeding due to the caseworker's one phone call with Appellant is without merit.  First, the phone call occurred before Appellee filed its permanent custody motion.  Second, even if the caseworker had informed Appellant that Appellee intended to seek permanent custody of the child (no evidence suggests that the caseworker did), "[n]otice by telephone or conversation is not sufficient" to comply with the due process protections afforded parents facing the termination of their parental rights. *In re Frizl*, 152 Ohio St. at 172; *accord In re S.S.*, 9th Dist. Wayne No. 10CA0010, 2010-Ohio-6374, 2010 WL 5541112, ¶ 47 (citing *Frizl* and concluding that caseworker's testimony that caseworker told parent about permanent custody hearing does not comply with due-process notice requirement).

{¶57} Consequently, we agree with Appellant that the trial court's decision placing the child in Appellee's permanent custody deprives her of due process of law.  Even if Appellant has not been a model parent, she had a constitutionally protected right to due process of law before the state forever terminated her parental rights:  "It is a mere truism to remark that ordinarily there is no more sacred relationship than that between a mother

and her child; and that even though a mother may have been grievously at fault at one time in her life, she has the right to have her character and fitness judged as of the time of any hearing concerning her and her child." *In re Frizl*, 152 Ohio St. at 172.  The failure to exercise reasonable diligence to serve Appellant deprived her of her fundamental right to maintain a relationship with her child.  As such, we agree with Appellant that she did not receive constitutionally sufficient notice of the permanent custody hearing.  We must reverse the trial court's judgment granting Appellee permanent custody.

{¶58} Accordingly, based upon the foregoing reasons, we sustain Appellant's first assignment of error and reverse the trial court's judgment. Appellant's second assignment of error is moot, and we do not address it. App.R. 12(A)(1)(c).

**JUDGMENT REVERSED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and that costs be assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.:  Concur in Judgment Only.


For the Court,


BY:  _____
Matthew W. McFarland, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**